STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. MAX H. ROLLER, DEFENDANT-RESPONDENT.

Argued February 2, 1959—Decided March 9, 1959.

*Mr. Sol Schulman* argued the cause for the appellant (*Mr. Lawrence A. Whipple,* Hudson County Prosecutor, attorney).

*Mr. Seymour Margulies* argued the cause for the respondent (*Mr. Maurice M. Krivit,* attorney; *Messrs. Levy, Lemken & Margulies,* counsel).

The opinion of the court was delivered by

JACOBS, J.  The State appealed to the Appellate Division from an order dismissing indictment No. 475 which the grand jury of Hudson County (1954 term—second session) had returned against the defendant Max H. Roller.  We certified the appeal on our own motion.  See *R. R.* 1:10–1 (*a*).

In 1949 the defendant was transferred from Dickinson High School, where he was listed as a teacher of history, to the accredited evening high school. Thereafter he was carried on the records of the evening high school as a duly qualified teacher and received monthly net salary checks from the Board of Education of Jersey City. Indictment No. 475 charged that from August 1951 to March 1954 the defendant never appeared or performed any services or duties whatever as a teacher at the evening high school but obtained monthly payments from the board of education by fraud or false pretenses, contrary to *N. J. S.* 2*A* :111–1. The indictment contained 32 counts, each of which related to a separate gross monthly salary payment, and the total amount alleged to have been received by the defendant from August 1951 to March 1954 was in excess of $15,000. When the grand jury returned indictment No. 475 it also returned indictment No. 476 which charged that the defendant had willfully and unlawfully obtained negotiable instruments from the Board of Education of Jersey City by falsely representing that he was performing the duties of a teacher at the accredited evening high school, contrary to *N. J. S.* 2*A* :119–3. This indictment contained 32 counts, each relating to a monthly net salary check. At a pretrial conference the parties, through their counsel, signed an order which consolidated both indictments for trial and which stipulated that the amount received by the defendant as charged in indictment No. 475 "represents the defendant's gross pay," whereas the amount received by the defendant as charged in indictment No. 476 "represents the defendant's net pay" as evidenced by 32 checks endorsed and cashed by the defendant.

At the trial, testimony supporting the indictments was duly introduced, and at the close of the State's case the defendant moved for judgment of acquittal on both indictments and, in the alternative, for an election by the State as to whether it would proceed on indictment No. 475 or indictment No. 476. The trial judge expressed the view that the evidence was sufficient to enable the jury to find

that the defendant had received his salary by falsely pretending that he was rendering teaching services and that the motion addressed to indictment No. 475, which the trial judge viewed as primarily referring to false pretenses, should therefore be denied. However, he concluded that indictment No. 476, which he viewed as primarily referring to false representations, should be dismissed and that there was consequently no need to deal with the alternative motion that the State be compelled to elect as between the indictments. No formal order of dismissal was ever entered, but the clerk's docket entries contain a reference to the dismissal of indictment No. 476 on March 7, 1957. The trial proceeded on indictment No. 475 and the defendant introduced testimony in support of his defense that although he had received and cashed the salary checks and had never rendered the teaching services, there had been no false pretenses or representations and no criminal conduct in violation of *N. J. S.* 2*A*:111–1. At the close of all of the testimony the defendant moved for judgment of acquittal, but his motion was denied and the case under indictment No. 475 was submitted to the jury for its determination. After deliberating for seven hours the jury was unable to agree and was discharged.

When the matter was about to be called for retrial of indictment No. 475 the defendant served notice that he would move for judgment of acquittal on the stated grounds of double jeopardy, collateral estoppel and due process. After hearing argument on the motion the trial judge concluded that there was substantial identity of charges and proof under both indictments and that since there had been a dismissal of indictment No. 476 (which he viewed as equivalent to a judgment of acquittal) the prohibition of double jeopardy precluded further prosecution of indictment No. 475. He orally announced his dismissal of indictment No. 475 on February 3, 1958, but his formal order of dismissal was not entered until February 17, 1958. On May 9, 1958 the State filed notice of appeal to the Appellate Division and in due course the defendant served notice of motion

to dismiss the appeal. After certifying the appeal, this court ordered that the motion to dismiss be held for argument and consideration with the appeal.

The common law properly concerned itself with the protection of the defendant from governmental harassment and oppression by repeated prosecutions for the same wrongful conduct. It formulated the principle cherished by all free men that no person may be twice put in jeopardy for the same offense, a principle which has continued undiminished in force and which has found firm expression in the Federal Constitution as well as the constitutions of most states. See *Green v. United States*, 355 *U. S.* 184, 78 *S. Ct.* 221, 2 *L. Ed. 2d* 199, 61 *A. L. R. 2d* 119 (1957); *State v. Labato*, 7 *N. J.* 137 (1951); *Roberts, "Double Jeopardy Reappraised,"* 7 *Buffalo L. Rev.* 461 (1957). Unlike the broader double jeopardy language of the Fifth Amendment, New Jersey's Constitution provides that no person shall, after acquittal, be tried for the same offense. See *Const.* 1844, *Art.* I, *par.* 10; *Const.* 1947, *Art.* I, *par.* 11. The reports of the 1844 Constitutional Convention indicate that our phraseology was used to insure against the contention that a defendant may be entitled to immunity from further trial where his first trial ends, not in acquittal, but in a jury disagreement or comparable indecisive disposition. See *City of Newark v. Pulverman*, 12 *N. J.* 105, 110 (1953). It is now well-settled that in our State a prosecution which has resulted in a jury disagreement may be continued on a retrial without in anywise infringing upon the defendant's rights. See *State v. Block*, 119 *N. J. L.* 277 (*Sup. Ct.* 1938), affirmed 121 *N. J. L.* 73 (*E. & A.* 1938); *State v. Van Ness*, 82 *N. J. L.* 181 (*Sup. Ct.* 1912), affirmed 83 *N. J. L.* 801 (*E. & A.* 1912); *Smith and Bennett v. State*, 41 *N. J. L.* 598 (*E. & A.* 1879). The same result has been reached under the double jeopardy clause of the Fifth Amendment. See *United States v. Perez*, 22 *U. S.* 579, 6 *L. Ed.* 165 (1824); *Wade v. Hunter*, 336 *U. S.* 684, 689, 69 *S. Ct.* 834, 93 *L. Ed.* 974, 978 (1949); *Dortch v. United States*, 203 *F. 2d* 709 (6 *Cir.* 1953),

*certiorari* denied, 346 *U. S.* 814, 74 *S. Ct.* 25, 98 *L. Ed.* 342 (1953) ; *Scott v. United States,* 91 *U. S. App. D. C.* 232, 202 *F. 2d* 354 *(D. C. Cir.* 1952), *certiorari* denied, 344 *U. S.* 879, 73 *S. Ct.* 176, 97 *L. Ed.* 681 (1952), *Bayne v. U. S.,* 344 *U. S.* 881, 73 *S. Ct.* 180, 97 *L. Ed.* 682 (1952).

Where a defendant has actually been tried and acquitted and the State thereafter seeks to bring him to trial again on a charge which it contends is not the same offense, more troublesome problems arise. See, *e. g.,* the recent case of *State v. Hoag,* 21 *N. J.* 496 (1956), affirmed 356 *U. S.* 464, 78 *S. Ct.* 829, 2 *L. Ed. 2d* 913 (1957), where four persons were robbed in the course of a holdup in a tavern. The defendant was accused of the robbery but denied that he was at the tavern or had anything whatever to do with the robbery. He was tried for having robbed three of the victims but was acquitted by a jury. Thereafter the State brought him to trial for having robbed the fourth victim and this time he was convicted by a different jury. His plea of double jeopardy was rejected by a sharply divided court which found that the separate prosecutions and trials did not deal with the same offense. In the course of the majority's opinion it expressed the view that our State most frequently employs the same evidence test under which a second trial is permissible except where "the evidence necessary to sustain the second indictment would have been sufficient to secure a legal conviction on the first." See 21 *N. J.,* at *page* 502. This approach may be contrasted with the same transaction test which also appears in our cases and which broadly suggests that the plea of double jeopardy should be sustained where the charged offenses are part of the same criminal transaction. See *State v. Cosgrove,* 103 *N. J. L.* 412 *(E. & A.* 1927) ; *State v. Pennsylvania Railroad Co.,* 9 *N. J.* 194 (1952) ; *State v. Mowser,* 92 *N. J. L.* 474 *(E. & A.* 1919) ; *Lugar, "Criminal Law, Double Jeopardy and Res Judicata,"* 39 *Iowa L. Rev.* 317, 323 (1954) ; *Note, "Statutory Implementation of Double Jeopardy Clauses,"* 65 *Yale L. J.* 339, 349 (1956) ; *Am. Law Inst., Administration of the Criminal Law, Official*

*Draft: Double Jeopardy,* 26, 29 (1935). Neither test has been considered absolute nor has either test proved to be entirely acceptable; the fact is that while the court has been seeking the elusive ideal test it has in each instance endeavored fairly to protect the State's vital interest in bringing the guilty to justice while at the same time fairly protecting the accused from multiple trials and punishment where in all substance and reality there has been but a single wrongdoing. See *State v. Labato, supra; State v. Mark,* 23 *N. J.* 162 (1957); *State v. Leibowitz,* 22 *N. J.* 102 (1956); *State v. Midgeley,* 15 *N. J.* 574 (1954); *State v. Shoopman,* 11 *N. J.* 333 (1953). *Cf. State v. Greely,* 30 *N. J. Super.* 180 (*Cty. Ct.* 1954), affirmed 31 *N. J. Super.* 542 (*App. Div.* 1954).

█ The defendant contends that under the same evidence test, the same transaction test, or under "any other reasonable test," indictment No. 475 must be viewed as charging the same offense as that charged in indictment No. 476. For present purposes we accept this contention as being sound. Indictment No. 475 rests upon *N. J. S.* 2A:111–1 which was a statutory enlargement of the common law crime of cheating by use of false tokens. See *State v. Vanderbilt,* 27 *N. J. L.* 328 (*Sup. Ct.* 1859). It was sufficient to deal with the defendant's alleged wrongful conduct in obtaining his teacher's salary by falsely pretending or representing that he had rendered the necessary teaching services. See *State v. Torrance,* 41 *N. J. Super.* 445 (*App. Div.* 1956). Indictment No. 476 dealt in substance with the same alleged wrongful conduct but was grounded on *N. J. S.* 2A:119–3, which this court in *State v. Fary,* 16 *N. J.* 317 (1954), held to be broad enough to encompass conduct comparable to that charged against the defendant. While that decision has been questioned, we need not now deal with it since indictment No. 476 was dismissed by the trial judge and his action is not before us for appellate review. Furthermore, we may assume, as the defendant urges, that if the State had first proceeded to trial on indictment No. 476 and the trial had resulted in an acquittal, the State could

not thereafter have brought the defendant to trial on indictment No. 475. That situation would presumably be one in which the plea of double jeopardy would be available to avoid the harassment and oppression incident to multiple prosecutions for what in substance and reality was the same wrongdoing. But here the State did not engage in any multiple prosecutions; on the contrary it prosecuted its charges in a single trial and the fact that, in the course of that single trial, some of its charges were dismissed, did not in any sense entail any of the harassment and oppression incident to multiple prosecutions or furnish any just basis for the plea of double jeopardy. See *United States v. Klein,* 247 *F.* 2d 908 (2 *Cir.* 1957); *United States v. Nickerson,* 211 *F.* 2d 909 (7 *Cir.* 1954); *Barsock v. United States,* 177 *F.* 2d 141 (9 *Cir.* 1949); *People v. Dreyer,* 71 *Cal. App.* 2d 181, 162 *P.* 2d 468 (1945); *Elstun v. People,* 104 *Colo.* 302, 91 *P.* 2d 487 (1939); *Crane v. People,* 91 *Colo.* 21, 11 *P.* 2d 567 (1932); *State v. Phillips,* 136 *Kan.* 407, 15 *P.* 2d 408 (1932); *People v. Savarese,* 1 *N. Y. Misc.* 2d 305, 114 *N. Y. S.* 2d 816 *(Cty. Ct.* 1952); *People v. Manuel,* 113 *N. Y. S.* 2d 415 *(Cty. Ct.* 1952).

In the *Barsock* case the defendant was charged with murder in an indictment which contained two counts; during the course of his trial the second count was dismissed and he was convicted on the first count and sentenced to life imprisonment. He contended that both counts were identical and that upon the dismissal of one of the counts he was entitled to the protection of the double jeopardy clause against conviction on the other count; the court summarily rejected his contention. In the *Nickerson* case [211 *F.* 2d 910] the defendant pleaded guilty on two separate indictments; thereafter he moved to vacate the judgments of conviction contending, *inter alia,* that the indictments "arose out of the same act and that prosecution on both offenses constituted double jeopardy." In rejecting this contention the court noted that "where two indictments describing the same offense are tried at the same time" there is no double jeopardy. In the *Klein* case [247 *F.* 2d 919] the court

pointed out that "there is no double jeopardy from differing dispositions of counts of a single indictment at a single trial." And in the *Dreyer* case [162 *P. 2d* 474] the court, in dealing with a dismissal of one count and a verdict of guilty on other counts, noted that the dismissal did not bar the conviction where the jeopardy "took place at the same trial."

In the *Crane* case the indictment against the defendant contained several counts; during the trial some counts were withdrawn by the state, other counts were dismissed by the court, and the jury returned a verdict of guilty on one count and not guilty on the remaining counts. The defendant contended that the counts contained charges which were substantially identical, and that upon the dismissal and withdrawal of some of the counts and the verdict of not guilty on others he could no longer be convicted. In rejecting his contention the court relied on decisions in the United States Supreme Court and elsewhere which have upheld a jury finding of guilty on one count even though it was accompanied by a finding of not guilty on another count containing substantially the same charge. *Cf. State v. Friedman,* 98 *N. J. L.* 577 (*E. & A.* 1923) ; *State v. Verona,* 93 *N. J. L.* 389, 392 (*E. & A.* 1919) ; *State v. Bullock,* 4 *N. J. Misc.* 195, 198 (*Sup. Ct.* 1926), affirmed 103 *N. J. L.* 204 (*E. & A.* 1926). Overruling its own earlier holding in *Webb v. People* (83 *Colo.* 1, 262 *P.* 906 (1927)), the Colorado Supreme Court had this to say as to the practical consequences which might flow from a ruling that the plea of double jeopardy is available upon a dismissal of less than all of the charges during the course of a single trial:

"From the practical standpoint of the administration of the criminal law, the reason for the * * * rule [in favor of the state's position] is readily comprehended when we remember that it is the well-known and repeatedly approved practice of prosecutors to charge the same offense in varying language in separate counts of the same information. This is often necessary, because the state cannot, in advance, be certain what facts may be developed by the evidence, and a bill of particulars is thus obviated. When the people's evidence is in, an election between the counts is equivalent to a dismissal

or abandonment of those not selected. But, if this is equivalent to an acquittal thereon,. as held in the *Roland* case [*Roland v. People*, 23 *Colo.* 283, 47 *P.* 2d 269] and the *Briola* case [*Briola v. People*, 76 *Colo.* 489, 232 *P.* 924], *supra*, the state, though having a water tight case against defendant, would dare neither to elect, dismiss, nor abandon. Nor would it dare submit verdicts on each count save under an instruction to convict on all or none, since an acquittal on one operates as an acquittal on all, as held in the *Webb* case, *supra*." (11 *P.* 2d, at *page* 569)

The circumstances in the instant matter clearly illustrate not only the inapplicability of the double jeopardy prohibition but also the lack of merit to the defendant's contention that the retrial is precluded by principles of collateral estoppel, *res judicata* and due process. See *Sealfon v. United States,* 332 *U. S.* 575, 68 *S. Ct.* 237, 92 *L. Ed.* 180 (1948); *Ciucci v. Illinois,* 356 *U. S.* 571, 78 *S. Ct.* 839, 2 *L. Ed. 2d* 983 (1958). When the charges were preferred against the defendant on the same facts but under different enactments they might have been embodied either in separate counts or in separate indictments; the difference would appear to be without any legal significance. See *R. R.* 3 :4–7; *Dunn v. United States,* 284 *U. S.* 390, 393, 52 *S. Ct.* 189, 76 *L. Ed.* 356, 358 (1932). After the indictments were returned they were consolidated for trial, apparently without any preliminary motion for dismissal or election. However, when the State rested its case the defendant did seek dismissal or election; the court first concluded that the evidence was sufficient to go to the jury on indictment No. 475 and declined to dismiss it, and it then dismissed indictment No. 476 and ordered that the trial proceed. In no sense was there any harassment or oppression or multiple prosecution, nor was there any unfairness let alone any violation of the basic fair play concepts which underlie the invocation of the due process clause. And the principles of collateral estoppel and *res judicata,* if at all applicable, could in no event be invoked here to the defendant's advantage, for the first and unaltered ruling by the trial court was in the State's favor to the effect that the evidence was legally adequate for submission to the jury on the charge

preferred under *N. J. S.* 2*A*:111–1. The prohibition of double jeopardy and related principles undoubtedly have a valuable place in our criminal jurisprudence for the protection of a defendant against unfair plural attempts to convict him for a single offense; but it would clearly pervert those very principles and unduly restrict the State's ability to prosecute if we were to hold that the trial court's action in relieving the defendant of meeting the charge preferred under *N. J. S.* 2*A*:119–3 automatically precluded the State from obtaining a determination in the same trial on the charge preferred under *N. J. S.* 2*A*:111–1.

We are convinced that the dismissal of indictment No. 476 in nowise barred the continuance of the trial on indictment No. 475 and, if there had been an acquittal by the jury on that indictment, the matter would have ended there, for the State would then admittedly have had no right of appeal. See *City of Newark v. Pulverman, supra; State v. Hart,* 90 *N. J. L.* 261 (*E. & A.* 1917); *Note, "The Right of State Appeal in Criminal Cases,"* 9 *Rutgers L. Rev.* 545, 551 (1955). But the jury did not acquit, was discharged when it was unable to agree, and under settled principles the defendant could be retried before another jury. See *State v. Block, supra; State v. Van Ness, supra; Smith and Bennett v. State, supra.* In dismissing indictment No. 475 on the ground that the defendant could not be retried the trial court erred. The defendant now urges that the trial court's ruling, even though erroneous, was not appealable by the State; our law is well-established to the contrary. See *R. R.* 3:5–5(*b*)(7); *State v. Then,* 114 *N. J. L.* 413 (*Sup. Ct.* 1935); *State v. Davidson,* 116 *N. J. L.* 325 (*Sup. Ct.* 1936); *State v. Weleck,* 10 *N. J.* 355, 362 (1952); *City of Newark v. Pulverman, supra,* 12 *N. J.,* at *page* 112; *State v. Midgeley, supra; State v. Mark, supra;* see also *Taylor v. United States,* 207 *U. S.* 120, 127, 28 *S. Ct.* 53, 52 *L. Ed.* 130, 134 (1907), where the United States Supreme Court held, in an opinion by Justice Holmes, that the federal legislation which permits certain criminal appeals by the government, including appeals from dismissals of indict-

ments, does not violate the double jeopardy clause of the Fifth Amendment. See 18 *U. S. C. A.*, § 3731 (1951); *cf. Carroll v. United States*, 354 *U. S.* 394, 77 *S. Ct.* 1332, 1 *L. Ed.* 2d 1442 (1957).

In *State v. Then, supra,* the trial judge quashed indictments which had been returned against the defendants. A writ of *certiorari* was issued to review the court's action, and in due course the former Supreme Court set it aside and remitted the matter for trial. In the course of his opinion Justice Perskie noted that while the granting of a motion to quash an indictment was discretionary, the Supreme Court could, in the exercise of its constitutional prerogative writ jurisdiction, set aside the trial court's action for abuse of discretion. In *State v. Davidson, supra,* the former Supreme Court reviewed and set aside, on *certiorari,* the quashing of indictments returned against the defendants; in the course of his opinion Justice Case pointed out that while the granting of a motion to quash was considered discretionary, the rule was that the discretion to quash should not be exercised except upon the "clearest and plainest ground." When the Constitution of 1947 was adopted it preserved the substance of the prerogative writ jurisdiction while discarding its form, and the implementing court rules have since their inception expressly provided that "the state may appeal from an order of the trial court dismissing an indictment or accusation." See *R. R.* 3:5–5(*b*)(7). Several appeals by the State have heretofore been taken pursuant to *R. R.* 3:5–5(*b*)(7), and in *State v. Weleck, supra,* this court set aside a trial judge's dismissal of an indictment which he erroneously found to have been barred by the statute of limitations.

In *State v. Midgeley,* 28 *N. J. Super.* 491 (*App. Div.* 1953), the Appellate Division set aside a trial judge's action in dismissing an indictment which he found to have been barred by principles of double jeopardy; this court reversed on the merits without questioning the State's appeal under *R. R.* 3:5–5(*b*)(7). See 15 *N. J.* 574 (1954). In *State v. Mark, supra,* 23 *N. J.,* at *page* 166, this court gave

recent recognition to the authorities sustaining the State's right to appeal under *R. R.* 3 :5–5 (*b*) (7) from a trial court's dismissal of an indictment before trial on the defendant's plea of double jeopardy; it found no occasion (nor do we have such occasion here) to pass on the State's right to appeal from an order of acquittal on a plea of double jeopardy entered during the course of a trial while the defendant is in jeopardy. We find no merit to the defendant's contention that *R. R.* 3 :5–5 (*b*) (7) is violative of that portion of *Art.* VI, § 5, *par.* 4 of the *Constitution of* 1947 which provides that the review in lieu of prerogative writ shall in criminal causes be discretionary rather than as of right. That provision was intended to preclude dilatory interlocutory reviews in criminal causes as a matter of constitutional right (*cf. R. R.* 3 :5–5 (*b*) (6) (*a*)) but was not at all intended to prevent the Supreme Court from exercising its constitutional discretion by allowing reviews from final orders dismissing indictments and embodying its action in a formal court rule (*R. R.* 3 :5–5 (*b*) (7)) promulgated under the authority of *Art.* VI, § 2, *par.* 3. See also *Art.* VI, § 5, *par.* 2; *Art.* VI, § 5, *par.* 1; *R. R.* 2 :2–1; *R. R.* 1 :2–1; *R. R.* 1 :2–4; *State v. Weleck, supra,* 10 *N. J.,* at *pages* 362–364.

[5, 6] Finally, the defendant contends that the State's appeal was "fatally defective and improperly prosecuted." He relies on the fact that the order dismissing indictment No. 475 was captioned and filed in the County Court, whereas the notice of appeal, though filed with the County Clerk, was captioned in the Superior Court. The alleged miscaption (*cf. R. R.* 3 :3–8) in nowise prejudiced the defendant and is of no significance whatever. The defendant also places reliance on the fact that although the State's appeal was taken within the three-month period from the entry of the order dismissing indictment No. 475 (see *R. R.* 1 :3–1), it was not taken within three months from the date on which the trial judge delivered his oral opinion. But this latter date is not the controlling one since appeals are taken from orders and judgments and not from opinions.

See *Macfadden v. Macfadden,* 49 *N. J. Super.* 356, 359 (*App. Div.* 1958), certification denied, 27 *N. J.* 155 (1958). Accordingly, the defendant's motion to dismiss the appeal is denied, the order dismissing indictment No. 475 is set aside and the cause is remanded for retrial.

Reversed.

*For reversal*—Chief Justice WEINTRAUB, and Justices HEHER, BURLING, JACOBS, FRANCIS and PROCTOR—6.

*For affirmance*—None.