**UNITED STATES of America**

v.

**Roosevelt ROLLERSON, Appellant.**

**No. 24154.**

United States Court of Appeals, District of Columbia Circuit.

Decided April 13, 1971.

Petition for Rehearing Denied May 13, 1971.

Mr. William H. Allen, Washington, D. C. (appointed by this court) and Mr. Allan J. Topol, Washington, D. C., were on the brief for appellant.

Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry and John R. Dugan, Asst. U. S. Attys., were on the brief for appellee.

Before BAZELON, Chief Judge, and WILBUR K. MILLER, Senior Circuit Judge, and McGOWAN, Circuit Judge.

BAZELON, Chief Judge:

This appeal presents a single question: may a criminal defendant who is summarily punished for contempt of court under Rule 42(a) of the Federal Rules of Criminal Procedure and 18 U. S.C. § 401(1) later be prosecuted under different penal statutes for the same act? We hold that he can.

Appellant was on trial for robbery in February 1963. On the third day of trial, February 14th, moments after the court convened and with the jury in the box, appellant threw an ice-filled plastic water pitcher at the prosecutor, hitting him in the shoulder and causing the pitcher to break. The trial judge immediately excused the jury and told appellant that whether he had been in contempt would be considered at sentencing if he were found guilty or, if he were acquitted, immediately thereafter. The trial resumed after a half hour recess. Later that same day, the trial was completed with a verdict of guilty as charged. One week later, on February 21, 1963, appellant was sentenced to imprisonment for three to nine years for the robbery offense. At the same time, the court found appellant in contempt of court and sentenced him to one year imprisonment, the sentence to be served consecutively to the sentence for the robbery conviction.[1]

Four days later, appellant was indicted for assault with a dangerous weapon (22 D.C.Code § 502) and assault on a federal officer engaged in the performance of his official duties (18 U.S.C. § 111). He was tried before a jury on July 15, 1963, and found guilty as charged. The trial judge sentenced him to one to three years on each count, the sentences to run concurrently with each other but consecutively to the sentences previously imposed for robbery and contempt.

The ensuing procedural history of this case—recounted in the margin [2]—is not

---

1. Pursuant to Rule 42(a), Fed.R.Crim.P., the court filed the following document:
"FINDINGS OF FACT, CER-
TIFICATE AND ORDER
OF CONTEMPT
"The defendant in the above case was charged with the offense of robbery. His case came on for trial, and a jury was sworn on February 12, 1963. On the morning of February 14, 1963, the case had been completed except for the summations of counsel, the Court's charge to the jury, and the verdict. Immediately after the opening of Court on that date, as I was glancing down at some papers on the Bench, I heard a crash, looked up and saw the District Attorney rubbing his left shoulder, and the fragments of a pitcher and ice strewn about him. I then looked to the defendant's side of the courtroom and saw the defendant on the floor struggling with a deputy marshall who was holding him down. I immediately directed the jury to retire to their jury room, after which I instructed the deputy marshall to take the defendant to the cellblock and advise me when the defendant had quieted down and was in condition for a resumption of the trial. Within perhaps a half hour thereafter the defendant was in such condition, and he

was brought into the courtroom and the trial was resumed. I did not actually see defendant hurl the pitcher at the District Attorney, as I was looking down at some papers, but that fact is undisputed; and I certify that what I saw and heard constituted contempt by the defendant of the Court's authority in that his conduct constituted misbehavior in the Court's actual presence which obstructed the administration of justice. Accordingly, I hold the defendant in contempt, and sentence him to imprisonment for one year to commence at the expiration of the sentence that day imposed on a verdict of guilty in the above entitled.
[signed]"

2. Appellant appealed the robbery and contempt convictions but not the assault convictions. On October 1, 1964, this court affirmed the robbery conviction, subject to determination on remand of appellant's mental condition. The contempt conviction was reversed and remanded for a hearing under the Federal Rules of Criminal Procedure, Rule 42(b), to determine appellant's mental responsibility for the assaults. This court also ruled that the maximum sentence for a contempt conviction would be 90 days unless a jury trial were held. Rollerson v.

directly relevant to the issue on this appeal. Appellant now seeks to reverse a judgment of the District Court denying his motion to void the assault conviction and sentence on the ground that the Double Jeopardy Clause precluded the prosecution for assault, once appellant had been convicted and sentenced for contempt.

Appellant's double jeopardy claim would have received short shrift several decades ago. The contempt power was long considered to be *sui generis,* and the usual procedural protections accorded criminal defendants were not applicable to one charged with contempt.[3] This view of criminal contempt, however, has been substantially eroded by numerous Supreme Court decisions which have tended to assimilate criminal contempt to ordinary crimes.[4] Appellant's motion can only be denied, therefore, if a separate prosecution for a criminal offense, following a summary contempt conviction, does not violate the policies of the Double Jeopardy Clause.

Even with this different starting point, appellant's claim would still get short shrift if we were to follow the clearest statement from the Supreme Court on the double jeopardy rule for multiple prosecutions. In Gavieres v. United States, 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489 (1911), petitioner had been prosecuted and convicted first of disorderly conduct, then of insulting a

---

United States, 119 U.S.App.D.C. 400, 343 F.2d 269 (1964).

At the remand hearing on March 4th and 5th, 1965, following an examination of appellant at Saint Elizabeths Hospital, the Trial Judge vacated the prior sentence for contempt, found appellant unaffected with a mental disease or defect at the time he threw the water pitcher, and sentenced appellant to 90 days for contempt, to run consecutively to the sentence imposed in the assault case.

Appellant did not appeal the second contempt judgment. However, on March 9, 1967, he began collateral proceedings in the assault case, filing a motion for a writ of error coram nobis (which this court later treated as a motion under 28 U.S.C. § 2255) to avoid that conviction on the ground that he had been twice put in jeopardy for the same offense, since he had previously been found guilty of contempt. The District Court denied this motion on October 11, 1967. On November 26, 1968, this court affirmed the District Court's denial of relief, without reaching the merits of the double jeopardy claim, on the ground that the claim could not be reached for the first time on collateral attack when there was no explanation of why it was not raised at trial. Rollerson v. United States, 132 U.S.App. D.C. 10, 405 F.2d 1078 (1968). The court recognized, however, that appellant could renew his claim if he alleged some considerations indicating that collateral relief ought to be afforded. On April 7, 1969, the Supreme Court granted appellant's petition for certiorari and ordered that the case be remanded to the District Court for further consideration in light of Kaufman v. United States, 394 U.S. 217,

89 S.Ct. 1068, 22 L.Ed.2d 227 (1969). Rollerson v. United States, 394 U.S. 575, 89 S.Ct. 1300, 22 L.Ed.2d 557 (1969).

On November 5, 1969, a hearing was held in the District Court on the remand from the Supreme Court. The court concluded, *inter alia,* that appellant did not intentionally relinquish or abandon a known right or privilege and that therefore appellant could collaterally raise the issue of whether he was twice put in jeopardy. However, on the merits of his double jeopardy claim the court again ruled against appellant. United States v. Rollerson, 308 F.Supp. 1014 (D.D.C. 1970).

3. *See* Merchants' Stock & Grain Co. v. Board of Trade of the City of Chicago, 201 F. 20, 26–27 (8th Cir. 1912).

4. *See, e. g.,* Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 444, 31 S.Ct. 492, 55 L.Ed. 797 (1911) (reasonable doubt standard); Cooke v. United States, 267 U.S. 517, 537, 45 S.Ct. 390, 69 L.Ed. 767 (1925) (notice, hearing, counsel, attendance of witness); In re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948) (public trial); Offutt v. United States, 348 U.S. 11, 75 S.Ct. 11, 99 L.Ed. 11 (1954) (unbiased judge); Panico v. United States, 375 U.S. 29, 84 S.Ct. 19, 11 L.Ed.2d 1 (1963) (insanity defense); United States v. Barnett, 376 U.S. 681, 84 S.Ct. 984, 12 L.Ed.2d 23 (1964) (jury trial); Harris v. United States, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965) (notice and hearing); Cheff v. Schnackenberg, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966) (jury trial); Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968) (jury trial).

public officer. Though the Court found that he had been twice prosecuted and convicted for exactly the same conduct, it upheld the second conviction. The Court endorsed what is known as the "same evidence" test:

"A conviction or acquittal upon one indictment is no bar to a subsequent conviction and sentence upon another, unless the evidence required to support a conviction upon one of them would have been sufficient to warrant a conviction upon the other. The test is not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offense. A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." [5]

Criminal contempt under 18 U.S.C. § 401(1) and the two assault offenses of which appellant in this case was convicted clearly have different elements,[6] so

this test, if still the law, would settle the question against appellant's claim.

We do not rest on this ground, however, for two reasons. First, the status of the *Gavieres* rule as a binding interpretation of the constitutional provision is in some doubt. The offenses in *Gavieres* were committed in the Philippine Islands, where the applicable provision was a congressional statute: "No person, for the same offense, shall be twice put in jeopardy of punishment." [7] The Court remarked that this provision had already been construed as enacting the sense and meaning of the constitutional provision,[8] but the comparatively recent case of Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), indicates that the Court may treat *Gavieres* as a case of statutory construction only.[9]

Second, the "same evidence" rule has been the subject of severe academic and judicial criticism for many years, most notably in Mr. Justice Brennan's concurring opinions in Abbate v. United States, 359 U.S. 187, 196, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959), and Ashe v. Swen-

---

5. *Quoting* Morey v. Commonwealth, 108 Mass. 433 (1871).

6. 18 U.S.C. § 401:
   "A court of the United States shall have power to punish * * * such contempt of its authority * * * as—
   "(1) Misbehavior of any person *in its presence* or so near thereto as to obstruct the administration of justice * * *. [Emphasis added.]"

7. Act of July 1, 1902, § 5, 32 Stat. 691, ch. 1369. *Cf.* U.S.Const. amend. V: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb * * * *"

8. *Citing* Kepner v. United States, 195 U.S. 100, 24 S.Ct. 797, 49 L.Ed. 114 (1904).

9. In *Green* the Court held that where a defendant has been prosecuted for first degree murder, but the jury returns a verdict of second degree murder, subsequent reversal of the second degree murder conviction will not permit defendant to be reprosecuted for first degree murder. The only case which had raised the issue before, Trono v. United States, 199 U.S.

521, 26 S.Ct. 121, 50 L.Ed. 292 (1905), had gone the other way. *Trono*, however, like *Gavieres*, was based on the congressionally enacted double jeopardy provision cited in note 7 *supra*, and it too cited Kepner v. United States, 195 U.S. 100, 24 S.Ct. 797, 49 L.Ed. 114 (1904), for the proposition that the congressional provision simply enacted the constitutional one. The Court in *Green* said:
   "Those remarks were not essential to the decision so that even if they had been accepted by the full Court they would not be conclusive in this case where the interpretation of the Fifth Amendment is necessarily decisive."
355 U.S. at 197 n. 16, 78 S.Ct. at 228. Mr. Justice Brennan suggests that this disposition undermines the *Gavieres* rule in his concurring opinion in Abbate v. United States, 359 U.S. 187, 198 n. 2, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959).
   Mr. Justice Frankfurter, joined by Justices Burton, Clark, and Harlan, dissented in *Green* and vigorously protested the majority's treatment of *Trono* and *Kepner*. 355 U.S. at 205–215, 78 S.Ct. 221.

son, 397 U.S. 436, 449, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).[10]

In searching for broader grounds upon which to rest the decision in this case, we have the benefit of an excellent opinion by Judge Edelstein in a case on all fours with this one, United States v. Mirra, 220 F.Supp. 361 (S.D.N.Y. 1963). Judge Edelstein examined the Supreme Court's dicta in In re Chapman, 166 U.S. 661, 17 S.Ct. 677, 41 L. Ed. 1154 (1897), and Jurney v. Mac-Cracken, 294 U.S. 125, 55 S.Ct. 375, 79 L.Ed. 802 (1935), and found persuasive the observation that contumacious conduct in court can be an offense against the court's jurisdiction as well as an offense against the laws of the United States.[11] He then continued:

> Moreover, a criminal prosecution arising out of and subsequent to summary contempt conviction does not offend the policy underlying the protection against Double Jeopardy. As Mr. Justice Brennan has stated in Abbate v. United States, 359 U.S. 187, 199, 79 S.Ct. 666, 3 L.Ed.2d 729 * * *, "The basis of the Fifth Amendment protection against double jeopardy is that a person shall not be harrassed by successive trials; that an accused shall not have to marshal the re-

sources and energies necessary to his defense more than once for the same alleged criminal acts." Id. 359 U.S. at 198–199, 79 S.Ct. at 672–673. * * * *A person held in summary contempt and then subsequently indicted does not suffer the harrassment of successive trials.* * * * [S]ince an adversary type proceeding does not precede the swift imposition of a summary contempt conviction, a criminal prosecution on a charge arising out of the contumacious conduct is the first trial-type harrassment to which the contemnor is made subject. [Emphasis added.]

■ Here Judge Edelstein identified a consideration which is sufficient to dispose of the case at hand. Appellant committed his contumacious act on the last day of his trial. Since it was committed in the actual presence and hearing of the court, the trial judge was entitled to proceed summarily under Rule 42(a) of the Federal Rules of Criminal Procedure; we think it is without significance in this case that the judge did not cite and sentence appellant for contempt immediately, but waited until the next occasion that appellant appeared before him in connection with the underlying offense.[12] The contempt proceed-

---

10. In Mr. Justice Brennan's view, concurred in by Justices Douglas and Marshall,

> "the Double Jeopardy Clause requires the prosecution, except in most limited circumstances, to join at one trial all the charges against a defendant that grow out of a single criminal act, occurrence, episode, or transaction."

Ashe v. Swenson, 397 U.S. at 453–454, 90 S.Ct. at 1199 (concurring opinion).

11. "To permit a defendant to escape the consequences of his contumacy via the Double Jeopardy route would be to countenance a state of affairs where judges could become ineffectual in restoring judicial decorum for fear that a contempt conviction would raise a constitutional bar to a subsequent prosecution of the same act."

220 F.Supp. at 365–366. Since the Supreme Court has now recognized that a trial judge has several different methods available to control a contumacious de-

fendant, Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), this particular fear now seems exaggerated.

12. It has been held that some delay is permissible in invoking the summary contempt power, since the trial judge may wish to reflect on the necessity of its exercise and to prepare the contempt certificate. Hallinan v. United States, 182 F.2d 880 (9th Cir. 1950); MacInnis v. United States, 191 F.2d 157 (9th Cir. 1951), cert. denied, 342 U.S. 953, 72 S.Ct. 628, 96 L. Ed. 708 (1952). Delay until sentencing was specifically approved by the Supreme Court in the notorious case of Sacher v. United States, 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717 (1952). For cases following *Sacher*, see United States v. Schiffer, 351 F.2d 91 (6th Cir. 1965), cert. denied, 384 U.S. 1003, 86 S.Ct. 1914, 16 L.Ed.2d 1017 (1966); In re Osborne, 344 F.2d 611 (9th Cir. 1965); United States v. Galante, 298 F.2d 72 (2d Cir. 1962).

ing did not amount to a separate hearing or proceeding of the kind which invokes the Double Jeopardy Clause.[13] The judgment of the District Court is

Affirmed.

Senior Circuit Judge WILBUR K. MILLER did not participate in the decision of this case.

In *Sacher* the contumacious conduct had been directed at the trial judge personally, and many of the cases cited have noted that the judge may wish to delay action so that his decision will not be and will not appear to be affected by the passion of the moment. But in Mayberry v. Pennsylvania, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed. 2d 532 (1971), the Supreme Court held that a defendant in a criminal contempt proceeding should be given a public trial before a judge other than the one reviled by the contemnor. *See also* Offutt v. United States, 348 U.S. 11, 75 S.Ct. 11, 99 L.Ed. 11 (1954) (district court judges may not sit in judgment upon misconduct of counsel when the contemptuous conduct is directed against the judge). Since these cases make irrelevant one argument for permitting delays before summary contempt proceedings, the *Sacher* rule may be undermined.

This case, of course, does not present the question of the propriety of the summary contempt proceeding—an issue already considered by this court in another connection (*see* note 2 *supra*, error not to hold a hearing on appellant's mental competence)—but only the question whether the assault prosecution was barred by the summary contempt proceeding.

13. In this case we do not decide whether the Double Jeopardy Clause would bar a criminal prosecution following a separate contempt hearing pursuant to Rule 42(b), Fed.R.Crim.P.