186 N.J. Super. 35 (1982)
451 A.2d 197
STATE OF NEW JERSEY, PLAINTIFF,
v.
KEVIN WARREN, DEFENDANT. STATE OF NEW JERSEY, PLAINTIFF,
v.
GLEN SAYLES, DEFENDANT.
Superior Court of New Jersey, Law Division (Criminal), Essex County.
Decided July 1, 1982.
*36 Dale Jones, First Assistant Deputy Public Defender, for defendants.
Felice Mischel and Richard R. Uslan, Assistant Essex County Prosecutors, for the State (George Schneider, Prosecutor, Attorney).
BAIME, J.S.C. (temporarily assigned).
These consolidated motions present novel questions pertaining to the scope of the Fifth Amendment prohibition against double jeopardy. Defendants were called as witnesses in unrelated murder trials. Both refused to testify after being directed to do so by the trial judge. In summary proceedings conducted pursuant to R. 1:10-1 each defendant was convicted of contempt and sentenced to a six-month term in the county jail. Thereafter, the grand jury returned separate indictments charging each defendant with hindering the prosecution of another. See N.J.S.A. 2C:29-3(a)(3). These charges embrace the same acts for which defendants were summarily convicted of contempt.
At issue is whether the protection against double jeopardy precludes a criminal prosecution predicated upon the same conduct for which defendants have been punished in prior summary contempt proceedings. Ancillary questions are presented with respect to the applicability of N.J.S.A. 2C:1-8(b), which bars separate trials for multiple offenses "arising from the same episode" if such crimes are "known to the appropriate prosecuting *37 officer" at the time of the commencement of the initial proceeding.

I
The principal thrust of defendant's claim is that the present prosecution is barred by the federal and state constitutional prohibitions against double jeopardy. Although New Jersey's constitutional language is narrower than that set forth in the Fifth Amendment, the protection so conferred has been construed as coterminous with its federal counterpart.[1]State v. Barnes, 84 N.J. 362, 370 (1980); State v. Lynch, 79 N.J. 327, 340 (1979); State v. Rechtschaffer, 70 N.J. 395, 404 (1976); State v. Farmer, 48 N.J. 145, 168 (1966), cert. den. 386 U.S. 991, 87 S.Ct. 1305, 18 L.Ed.2d 335 (1967). Thus, there is no need to consider separately New Jersey's constitutional proscription against double jeopardy.
The Fifth Amendment proscribes multiple prosecution for "the same offense." While "[n]o one currently questions the great worth of [this] constitutional safeguard," difficulty arises in determining "just when we are dealing with the same offense within the contemplation" of that protection. State v. Currie, 41 N.J. 531, 536 (1964). The constitutional prohibition had its genesis in the early common law of England. Ashe v. Swenson, 397 U.S. 436, 450, 90 S.Ct. 1189, 1197, 25 L.Ed.2d 469 (1970). See, also, Note, "Statutory Implementation of Double Jeopardy Clauses: New Life for a Moribund Constitutional Guarantee," 65 Yale L.J. 339, 340-344 (1956). Although the phrase "same offense" appeared in the earliest articulations of the double jeopardy principle, see 4 Blackstone Commentaries 335, "questions of its precise meaning rarely arose prior to the 18th century." Ashe v. Swenson, supra at 451, 90 S.Ct. at 1198. By *38 the time the Bill of Rights was adopted it had not been authoritatively defined. Ibid. The first common law definition of the phrase "same offense" was premised upon the nature and type of evidence offered in multiple prosecutions. Ibid. See also State v. Currie, supra 41 N.J. at 538. Under this theory, the test of double jeopardy is whether "the evidence necessary to sustain the second indictment would have been sufficient to secure a legal conviction on the first." State v. Hoag, 21 N.J. 496, 502 (1956) aff'd 356 U.S. 464, 78 S.Ct. 829, 2 L.Ed.2d 913 (1957). Because a single transaction can be dissected into chronologically discrete crimes, the same evidence test often proved inadequate to vindicate the values underlying the double jeopardy proscription. Additional formulations of the principle thus developed. In varying factual settings, judicial attention has focused upon the identity of the elements of statutory crimes, see, e.g., State v. Best, 70 N.J. 56, 62 (1976); State v. Roller, 29 N.J. 339, 350 (1959); State v. Hoag, supra 21 N.J. at 502; State v. Leibowitz, 22 N.J. 102, 108 (1956); State v. Midgeley, 15 N.J. 574, 579 (1954); State v. Shoopman, 11 N.J. 333, 335 (1953); State v. Labato, 7 N.J. 137, 144 (1951); State v. DiGiosia, 3 N.J. 413, 419 (1950); State v. Thomas, 114 N.J. Super. 360, 364 (Law Div. 1971) mod. 61 N.J. 314 (1972); State v. Hill, 44 N.J. Super. 110, 112 (App.Div. 1957); the legislative design in enacting overlapping laws incriminating the same unlawful conduct, see, e.g., State v. Best, supra 70 N.J. at 61; State v. Davis, 68 N.J. 69, 78 (1975); State v. Ruiz, 68 N.J. 54, 66 (1975) (Justice Pashman dissenting); State v. Cormier, 46 N.J. 494, 501-502 (1966); State v. Stenson, 174 N.J. Super. 402, 406 (Law Div. 1980); State v. Bontempo, 170 N.J. Super. 220, 236 (Law Div. 1979), certif. den. 87 N.J. 317 (1981), and whether multiple charges emanate from a single criminal transaction or episode, see, State v. Pennsylvania R.R., 9 N.J. 194, 198 (1982); State v. Roller, supra 29 N.J. at 345; State v. Hoag, supra 21 N.J. at 503; State v. Fitzsimmons, 60 N.J. Super. 230, 233 (Cty.Ct. 1960); State v. Greely, 30 N.J. Super. 180, 184-5 (Cty.Ct. 1954), aff'd 31 N.J. Super. 542 (App.Div. 1954); State v. Cooper, 13 N.J.L. 361, 371 (Sup.Ct. 1833). Quite plainly, *39 no single test has achieved universal acceptance. Rather, our courts have eschewed technisms and inflexibility. The primary considerations should be "fairness and fulfillment of reasonable expectations in the light of the constitutional and common law goals." State v. Currie, supra 41 N.J. at 539. See, also, State v. Roller, supra 29 N.J. at 346, Caraway, "Pervasive Multiple Offense Problems  A Policy Analyses," 1971 Utah L.Rev. 105 (1971); Comment, "The Double Jeopardy Clause: Refining the Constitutional Proscription Against Successive Criminal Prosecutions," 19 UCLA L.Rev. 804 (1972).
The double jeopardy clause protects against a second prosecution for the same offense after an acquittal and following a conviction. It also guards against multiple punishments for the same offense. Brown v. Ohio, 431 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977); North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). The principle evolved as a reaction to the "prodigious prosecution advantages" of the early common law. See Note, "Consecutive Sentences In Single Prosecutions: Judicial Multiplication of Statutory Penalties," 67 Yale L.J. 916, 918 (1958). Its object and design were to secure finality in criminal litigation by protecting defendants from the threat, harassment and stigma of repeated criminal trials. The clause insures that "[t]he State shall not be permitted to make repeated attempts to convict the accused, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity...." State v. Barnes, supra 84 N.J. at 370. See, also, Green v. United States, 355 U.S. 184, 187-88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957).
The prohibition is "not against being twice punished, but against being twice put in jeopardy." Downum v. United States, 372 U.S. 734, 736, 83 S.Ct. 1033, 1034, 10 L.Ed.2d 100 (1963). Stated somewhat differently, the double jeopardy clause does not per se bar multiple prosecutions for the same criminal act. It merely precludes successive prosecutions for the same *40 offense. The essential question, therefore, is whether a criminal prosecution arising out of a summary contempt conviction offends the policies and goals underlying the protection against double jeopardy.
The authority to summarily punish an individual for contumacious conduct in the presence of the court has been recognized and approved in numerous cases notwithstanding the potential dangers inherent in this practice. See In re Yengo, 84 N.J. 111, 119-120 (1980), cert. den. 449 U.S. 1124, 101 S.Ct. 941, 67 L.Ed.2d 110 (1981); In re Carton Contempt, 48 N.J. 9, 21 (1966); In re Buehrer, 50 N.J. 501, 515 (1967); In re Boyd, 36 N.J. 285, 287 (1962); In re Hinsinger, 180 N.J. Super. 491, 495 (App.Div. 1981); In re Ungar Contempt, 160 N.J. Super. 322, 330 (App.Div. 1978). Such power finds its roots in "[s]tark necessity." United States v. Mirra, 220 F. Supp. 361, 364 (S.D.N.Y. 1963), quoting from Green v. United States, supra 355 U.S. at 213, 78 S.Ct. at 236. "[W]ithout the prospect of prompt prosecution, the prevailing litigant could be delayed in the enjoyment of his rights or even denied them in times and places in which those rights are in low popular regard." In re Buehrer, supra 50 N.J. at 515. Divested of summary contempt powers, the courts would find it impossible to control the disorderly and violent who respect neither the laws nor those charged with administering them. Yates v. United States, 355 U.S. 66, 70, 78 S.Ct. 128, 131, 2 L.Ed.2d 95 (1957); Ex parte Terry, 128 U.S. 289, 313, 9 S.Ct. 77, 82, 32 L.Ed. 408 (1888). This principle applies with equal force to the power to compel a recalcitrant witness to testify. Defiance of such an order falls within the purview of the summary contempt power. In re Hinsinger, supra 180 N.J. Super. at 495. It is to be noted in that regard that the public "has a right to every man's evidence." United States v. Bryan, 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1950). The cherished right to a trial by jury would be lost if a witness could make himself the final arbiter of the availability of his testimony. That is particularly true in criminal cases where witnesses often lack the motivation of self-interest to appear and testify. The right of the court to *41 compel such witnesses to testify and the authority to summarily punish those who wilfully defy such orders are self-evident.
These considerations compel the conclusion that an act which is a contempt of court and also a crime may be punished both by summary proceedings and by subsequent indictment and conviction. Conduct destructive of the court's decorum can also be an offense against the laws of the State. To afford a defendant a ready means of escape from the consequences of his contumacy would render the courts wholly ineffectual. Moreover, the judiciary would be placed in an unenviable dilemma. Should the court take immediate action by way of summary contempt, the State's right to prosecute would be sacrificed. The recalcitrant witness would be rewarded by what is in effect a grant of transactional immunity. Conversely, should the court fail to act in a timely fashion, the integrity of the trial would be forever lost  clearly an unconscionable result.
Further, in summary contempt cases the accused is not subjected to successive trials and prosecutions forbidden under the double jeopardy clause. It can hardly be argued that such an individual suffers the harassment of successive trials. Swift imposition of a summary contempt conviction is not preceded by an adversary-type proceeding. Simply stated, the prosecutor does not prosecute and the defense does not defend. A rebellious witness does not have the option of having the issue of his contumacy resolved with the full panoply of rights accorded an accused in a criminal proceeding. In a similar vein, the prosecutor is not obliged to present evidence or, for that matter, to interfere with the proceedings. In a very real sense, the trial of the accused for the crime arising out of his contumacious conduct is the first trial-type "harassment" to which the contemnor is made subject.
Research has disclosed no published decision in New Jersey dispositive of defendant's argument. Dicta in several decisions rendered by the United States Supreme Court lends support to the conclusion that a summary contempt conviction does not bar *42 a subsequent criminal prosecution for the same contumacious act. In Jurney v. MacCracken, 294 U.S. 125, 55 S.Ct. 375, 79 L.Ed. 802 (1935), defendant appealed from a conviction for contempt of Congress arguing that his conduct was also subject to prosecution under a federal statute. In dismissing this argument Justice Brandeis concluded that "[p]unishment, purely as such, through contempt proceedings, legislative or judicial, is not precluded because punishment may also be inflicted for the same act as a statutory offense." Id. at 151, 55 S.Ct. at 379. Similar language appears in In re Chapman, 166 U.S. 661, 17 S.Ct. 677, 41 L.Ed. 1154 (1897). There, the Supreme Court affirmed a conviction under a federal statute which made it a crime to refuse to testify before a Senate Committee although the contemnor was also subject to punishment for contempt of Congress. The court stated that "indictable statutory offenses may be punished as such, while the offenders may likewise be subjected to punishment for the same acts as contempts...." Id. at 672, 17 S.Ct. at 681.[2]
Other jurisdictions, both federal and state, have concluded that contumacious conduct may be the subject of multiple *43 punishment through summary contempt proceedings and statutory criminal prosecution. For example, in United States v. Rollerson, 449 F.2d 1000 (D.C. Cir.1971), defendant threw a water pitcher at the prosecutor during the course of a robbery trial. The judge immediately excused the jury and advised defendant that he would consider instituting contempt proceedings after completion of the trial. One week later, defendant was sentenced for the crime of robbery. At the same time, the trial judge held defendant in contempt and imposed a consecutive one year sentence. Shortly thereafter, the grand jury returned an indictment for assault on a federal officer. Defendant was convicted and ultimately sentenced to a one-year term, to run consecutively to the sentences previously imposed for robbery and contempt. The Court of Appeals subsequently affirmed. Writing for the court, Judge Bazelon concluded that the assault offense and criminal contempt have different elements. Id. at 1003. Preferring to rest his opinion on "broader grounds," the judge noted that different societal interests were vindicated by multiple convictions. Id. at 1004. So, too, he found that "the contempt proceeding did not amount to a separate hearing ... of the kind which involves the double jeopardy clause."[3]Id. at 1005. See, also, Merchant Stock and Grain Co. v. Bd. of Trade, 201 F. 20, 27 (8 Cir.1912).
In a similar vein, convictions for contempt and assault were upheld in United States v. Mirra, supra. There, defendant, while under cross-examination, hurled the witness chair at the federal prosecutor. Defendant was summarily held in contempt and sentenced to imprisonment for one year. The grand jury thereafter returned an indictment predicated upon the chairthrowing incident. Defendant moved to dismiss the indictment *44 on the basis of double jeopardy. The court denied this application in an exhaustive and well reasoned opinion. Specifically, the court concluded that the "interests of society in the preservation of courtroom control" would be frustrated by a strict and inflexible application of double jeopardy principles. Id. at 364-365. Judges would be unable to maintain order for fear that a summary contempt conviction would raise a constitutional bar to a subsequent prosecution of the same act. The court further noted that the "summary contemnor is not subjected to the harassment which the double jeopardy protection seeks to prevent." Id. at 366.
Of similar import are the decisions of the Supreme Court of Tennessee in Maples v. State, 565 S.W.2d 202 (Tenn. 1978), and Ricketts v. State, 111 Tenn. 380, 77 S.W. 1076 (1903). In Maples v. State, defendant instituted a divorce action, claiming that his wife was a resident. After being awarded a divorce, defendant sought to have the judgment set aside upon the basis that he had sworn falsely as to his wife's residency at the prior proceeding. In summary proceedings, the court held defendant in contempt and further directed that an investigation be made as to whether a criminal prosecution should be commenced. Defendant was subsequently indicted for perjury. The Supreme Court held that "the purposes of the general statutes authorizing a court to punish for abuse of its processes and those creating and prescribing punishment for various indictable offenses are so entirely different, and designed to accomplish such wholly different purposes"; that no violation of constitutional principles pertaining to double jeopardy arose. Id. at 205. In Ricketts v. State, supra, defendant was held in contempt for threatening a witness. Subsequently, defendant was charged with subornation of perjury arising from the same conduct. The Supreme Court held that imposition of the contempt citation did not preclude a later criminal prosecution. Id. at 1077. It was emphasized that the offenses of contempt and the statutory crime were "created upon different principles, for different purposes, [were] tried and punished differently, and a conviction *45 or acquittal of one [was] no bar to a prosecution for the other." Ibid. Cf. Ex parte Evett, 264 Ala. 675, 89 So.2d 88 (Sup.Ct. 1956); Garland v. State, 101 Ga. App. 395, 114 S.E.2d 176 (1960).
Distinguishable are such cases as United States v. Haggerty, 528 F. Supp. 1286 (D.Colo. 1981); United States v. United States Gypsum Co., 404 F. Supp. 619 (D.D.C. 1975); People v. Gray, 69 Ill.2d 44, 12 Ill.Dec. 886, 370 N.E.2d 797 (Sup.Ct. 1977), cert. den. sub nom. Illinois v. Gray, 435 U.S. 1013, 98 S.Ct. 1887, 56 L.Ed.2d 395 (1978), and Osborn v. State, 160 Tenn. 599, 28 S.W.2d 49 (Sup.Ct. 1930). All of these decisions pertained to indirect contempts committed out of the presence of the court and tried by way of full trial-type criminal prosecutions. The summary power to punish for direct contempt is quite different. As noted, it is a power necessary to the orderly dispatch and conduct of the business of the courts. Its use is not intended to immunize the rebellious witness from prosecution for violation of specific provisions of the Code of Criminal Justice.[4] Consequently, such contempt sanctions are imposed summarily and the contemnor does not suffer the harassment of separate trials.

II
The result reached here is not contrary to the mandatory joinder rule adopted in State v. Gregory, 66 N.J. 510 (1975) and *46 subsequently codified in N.J.S.A. 2C:1-8(b). See, also, Model Penal Code § 1.07(2) (Proposed Official Draft 1962). Under the rule "a defendant shall not be subject to separate trials for multiple criminal offenses based on the same conduct or arising from the same episode." N.J.S.A. 2C:1-8(b). Compulsory joinder is designed to advance the considerations of justice, economy, and convenience stressed by Justice Brennan in his opinion in Ashe v. Swenson, supra 397 U.S. at 454, 90 S.Ct. 1199. See State v. Gregory, supra 66 N.J. at 522. "It has also been suggested that, in addition, it will tend to promote `consistent and rational sentencing' since one judge will evaluate all the relevant conduct." Ibid. Another goal is "to prevent the State from bringing successive prosecutions based upon essentially the same conduct, whether the purpose in so doing is to hedge against the risk of an unsympathetic jury at the first trial, to place a `hold' upon a person after he has been sentenced to imprisonment, or simply to harass him by multiplicity of trials." Final Report of the New Jersey Criminal Law Revision Commission, New Jersey Penal Code, Commentary, at 20 (1971).
None of these considerations are present here. Neither the historical nor modern functions of the compulsory joinder rule encompass more than a prohibition against successive prosecutions. The underlying idea, "one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense...." Green v. United States, supra 355 U.S. at 187, 78 S.Ct. at 223. Harassment, in the setting of the compulsory joinder rule, implies misconduct by the prosecutor as well as hardship to the accused. See Comment, "Twice In Jeopardy", 75 Yale L.J. 262, 286 (1965). The statutory predicate is that the prosecutor must be aware of multiple offenses emanating from the conduct of the accused. The plain implication is that it is incumbent upon the prosecutor to insure that all charges stemming from the same criminal conduct are tried in a single proceeding. In other words, a second prosecution will be *47 deemed harassing when it is not absolutely necessary  when the first trial could have been dispositive of all issues pertaining to the same criminal episode or transaction. To that extent, the rule is applicable only in cases in which the charges could have been joined for the purpose of trial. Suffice it to say, a criminal prosecution for a statutory violation following a summary contempt conviction in no sense offends this policy. As noted previously, the prosecutor plays no role in a summary contempt case. Further, summary contempt proceedings do not involve a full trial. In sum, a subsequent criminal prosecution does not serve to harass the contemnor. For these reasons, defendant's argument is devoid of merit.
NOTES
[1] Our 1947 Constitution provides that "no person shall, after acquittal be tried for the same offense." Art. I, par. 11. That provision first appeared in the Constitution of 1844, Art. I, par. 10. The Constitution of 1776 was silent with respect to double jeopardy.
[2] The issue presented here was briefly discussed by the Supreme Court in Menna v. New York, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975). There, defendant was held in contempt in summary proceedings based upon his refusal to testify before a grand jury. Shortly thereafter, an indictment was returned charging defendant with contempt for the same acts. Defendant entered a plea of guilty to the indictment, but later appealed arguing that the subsequent prosecution was barred by the double jeopardy prohibition. The New York Court of Appeals held that the guilty plea precluded consideration of the issue by virtue of defendant's lack of standing. The Supreme Court reversed and remanded the matter to the Court of Appeals upon the ground that a guilty plea does not bar consideration of a double jeopardy assertion. Ibid. The Court specifically stated that it expressed no opinion with respect to the merits of the double jeopardy argument. However, Justice Brennan wrote a brief paragraph opinion noting his view that the double jeopardy clause was applicable. In a cryptic memorandum opinion, the New York Court of Appeals thereafter dismissed defendant's indictment without citation or a statement of reasons. People v. Menna, 38 N.Y.2d 850, 382 N.Y.S.2d 56, 345 N.E.2d 599 (1976).
[3] Defendant's sentence with respect to the robbery conviction was vacated by the Supreme Court in a summary order. See Rollerson v. United States, 394 U.S. 575, 89 S.Ct. 1300, 22 L.Ed.2d 557 (1969). In a separate opinion Justice Fortas stated that the Supreme Court's order was not to be considered as containing any implication with respect to the merits of the double jeopardy argument.
[4] The Code of Criminal Justice does not contain a provision dispositive of the issue presented here. N.J.S.A. 2C:1-10(a)(3) bars a subsequent prosecution "for a violation of a different provision of the statutes or based on different facts" unless "the offense of which the defendant was formerly convicted ... and the offense for which he is subsequently prosecuted each requires proof of a fact not required by the other and the law defining each of such offenses is intended to prevent a substantially different harm or evil...." Apparently, the "rule of this subsection" was designed to be "more stringent than `the reasonable expectation' test" of State v. Currie, supra, and State v. Cormier, supra. See Final Report of the New Jersey Criminal Law Revision Commission, New Jersey Penal Code, Commentary at 31 (1971). It is doubtful that this provision was intended to embrace summary contempt convictions and subsequent prosecutions for statutory violations. In any event, the exception to the statutory bar is satisfied for the reasons stated above.