**UNITED STATES of America,
Petitioner,**

v.

**UNITED STATES GYPSUM COMPA-
NY et al., Respondents.**

Crim. No. 1042–73.

United States District Court,
District of Columbia.

Dec. 10, 1975.

John C. Fricano, George Edelstein, L. John Schmoll, Michael A. Rosen, Peter A. Mullin, Dept. of Justice, Antitrust Div., Washington, D. C., for petitioner.

Hugh Lynch, Jr., James F. Bromley, Macleay, Lynch, Bernhard & Gregg, Washington, D. C., Robert C. Keck, James G. Hiering, Valentine A. Weber, Jr., Douglass F. Rohrman, Price, Cushman, Keck, Mahin & Cate, Chicago, Ill., for U. S. Gypsum Co.

Arthur W. Leibold, Jr., Dechert, Price & Rhoads, Washington, D. C., H. Francis DeLone, Alfred W. Cortese, Jr., John F. Wilson III, Dechert, Price & Rhoads, Philadelphia, Pa., David K. Floyd, William L. Rieth, Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, N. Y., for National Gypsum Co.

John M. Wood, Reed, Smith, Shaw & McClay, Washington, D. C., W. Donald McSweeney, William A. Montgomery, Suzanne B. Conlon, Schiff, Hardin & Waite, Chicago, Ill., for The Celotex Corp.

Fred M. Vinson, Jr., Reasoner, Davis & Vinson, Washington, D. C., Cloyd R. Mellott, William B. Mallin, J. Gary Kosinski, Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., for Georgia-Pacific Corp.

Fred H. Bartlit, Jr., Thomas A. Gottschalk, Jeffrey S. Davidson, Kirkland & Ellis, Chicago, Ill., for Graham J. Morgan and Andrew J. Watt.

Paul C. Warnke, Thomas Richard Spradlin, Clifford, Warnke, Glass, McIlwain & Finney, Washington, D. C., for Colon Brown.

Thomas M. O'Malley, Michael F. X. Dolan, Washington, D. C., D. Malcolm Anderson, William H Hauser, Anderson, Moreland & Bush, Pittsburgh, Pa., for William H. Hunt.

PARKER, District Judge.

## MEMORANDUM OPINION

The proceeding which is the subject of the motion to dismiss under consideration herein is a criminal contempt action brought by the United States Government alleging violations of a Decree of this Court entered in May 1951. That Decree enjoined Respondents herein who are four corporations and four corporate officers all involved in the gypsum wallboard industry from engaging in price fixing activities.[1] Respondents have moved to dismiss the Contempt Petition, contending that their recent trial and convictions (the Pittsburgh trial) in the United States District Court for the Western District of Pennsylvania for the same price fixing activities which form the basis of this contempt proceeding bar this prosecution and require dismissal on double jeopardy and due process principles. After consideration of the memoranda and oral arguments of counsel for both sides and the entire record herein, this Court concludes that the motion to dismiss should be granted.[2]

---

1. *United States v. United States Gypsum Co.*, 340 U.S. 76, 71 S.Ct. 160, 95 L.Ed. 89 (C.A. No. 8017, D.D.C. May 15, 1951). Respondents United States Gypsum Company, National Gypsum Company and the Celotex Corporation were parties to the 1951 Decree. Georgia-Pacific was not named but had acquired one of the actual parties, Certain-Teed Products Corporation. Although the four individual Respondents were not named in the Decree, the corporations "and their respective officers, directors, agents, employees, representatives and any person acting or claiming to act under, through or for them . . . [were] enjoined from entering into or performing any agreement or understanding among the defendant companies or other manufacturers of gypsum products to fix, maintain or stabilize . . . the prices, or the terms or conditions of sale, of gypsum products sold or offered for sale to other persons, in or affecting interstate commerce. . . ." *Id.*, Decree, Article V.

2. Respondents have also moved to dismiss on the basis of an undue delay in the filing of

## The Factual Background

On December 27, 1973, the United States filed a Contempt Petition charging that Respondents, in violation of this Court's Final Judgment in *United States v. United States Gypsum Co., et al* 340 U.S. 76, 71 S.Ct. 160, 95 L.Ed. 89 (C.A. No. 8017, D.D.C. May 15, 1951), *inter alia* engaged in a conspiracy ". . . beginning sometime prior to 1960 and continuing thereafter at least until sometime in 1973 time prior to 1960 and continuing thereafter at least until sometime in 1973 . . . to (a) raise, fix, maintain and stabilize the price of gypsum board; and (b) fix, maintain and stabilize the terms and conditions of sale thereof; and (c) adopt and maintain uniform methods of packaging, handling and delivery of gypsum board." (Contempt Pet. ¶ 16).

On the same day the Contempt Petition was filed in this Court a federal grand jury in Pittsburgh, Pennsylvania indicted sixteen corporate and individual defendants, including each of the eight Respondents named in this proceeding, charging them with price fixing in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. The substantive allegations of the indictment are virtually identical to those of the Contempt Petition. tion. Two of the individual Respondents in this case were among the defendants who pled *nolo contendere* to the charges in the Pittsburgh indictment.[3] The remaining six Respondents[4] were convicted in July of this year after a four month jury trial. All of the Pittsburgh defendants have now been sentenced[5] and those who were convicted after trial are appealing their convictions to the United States Court of Appeals for the Third Circuit.

## Motion to Dismiss

In granting Respondents' motion to dismiss on double jeopardy and due process grounds this Court is persuaded that to subject them to a second protracted trial for contempt of this Court's 1951 Decree, when that second trial would involve the same evidence of the same conspiracy for which they have already been convicted, would contravene the spirit and the purpose of the double jeopardy bar, would amount to harassment of Respondents and would violate the concepts of fairness on which that bar is based. Justice Marshall recently observed that "[w]hen a defendant has been once convicted and punished for a particular crime, principles of fairness and finality require that he not be subjected to the possibility of further punishment by being again tried or sentenced for the same offense."[6]

the Contempt Petition. In the alternative, Respondents have moved to stay any contempt proceedings pending a final resolution of their appeals from the Pittsburgh convictions. The Government has filed two discovery motions, one for a subpoena duces tecum under Rule 17(c), Fed.R.Crim.P., and another for pretrial discovery under Rule 16(c) and (d) Fed.R.Crim.P. Arguments on all motions were heard on October 17, 1975. In view of this Court's conclusion that the Respondents should prevail on their double jeopardy and due process theories, these other pretrial motions will not be discussed.

Another motion was briefly argued although not previously scheduled—counsel for Respondent Hunt moved to dismiss the Contempt Petition on the ground that since Hunt was not specifically named in the 1951 Decree, *supra* n. 1, the Petition should have alleged that he wilfully violated the Decree.

Transcript, October 17, 1975, at 85–87. This motion need not be decided, however, in light of the present disposition of this matter.

3. Graham J. Morgan and William H. Hunt.

4. United States Gypsum Company, National Gypsum Company, Georgia-Pacific Corporation, The Celotex Corporation, Colon Brown and Andrew J. Watt.

5. The four corporations received the maximum sentence and the four individuals who are now before this Court received sentences ranging from a $10,000 fine, costs, six months' imprisonment (suspended) and one year's probation (Andrew Watt) to a $50,000 fine, costs, six months' imprisonment (suspended) and three years' probation (Colon Brown).

6. *United States v. Wilson,* 420 U.S. 332, 343, 95 S.Ct. 1013, 1021, 43 L.Ed.2d 232 (1975).

*Double Jeopardy*

Counsel for both sides have presented and discussed an array of cases dealing with the double jeopardy issue. Those cases and the unique circumstances involved in this contempt proceeding, however, indicate to the Court that the situation here presented involves one of first impression. All of the authorities cited by the Government can be readily distinguished; on the other hand, Respondents have relied principally on analogous cases, dicta or concurring opinions. Thus the resolution of this matter has become more difficult in the absence of directly applicable precedent.

The Government argues that two separate prosecutions arising out of the same price-fixing conspiracy, one for contempt and another for the substantive criminal violation, are permissible because different offenses are involved. According to the Government, the Sherman Act [7] and the criminal contempt statute [8] have different elements, protect different interests and were intended by Congress to be separate crimes. In support of its position, the Government relies on the "same evidence" test as articulated in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932):

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

In connection with this test, the Government argues that the wilful violation of the 1951 Decree must be proved in the pending contempt proceeding, but that wilfulness was not an element of the substantive crime for which Respondents were recently convicted. Since there are two separate offenses, it is urged that two trials and two punishments are not prohibited.

■ Contrary to the Government's submission, this Court is persuaded that the proper application of the "same evidence" test focuses not merely on a comparison of the statutory elements of these two offenses, but on whether either trial will involve any significant categories of proof absent from the other. Here it appears that the contempt proceeding will be a replay of the Pittsburgh trial with the exception that proof of a wilful violation of the 1951 Decree will be adduced in the contempt trial. With this exception, both prosecutions are based on the same alleged conspiracy—a conspiracy involving the same products, the same time period, and the same geographical areas and which is alleged to have had the same purpose and effect. Both prosecutions will require proof of the same facts by means of the same evidence.

As the Government's counsel conceded in oral argument:

> Your Honor, we went through a four-month trial, as has been pointed out in the argument today [on] the conspiracy charge. And the evidence and the factual issues in this trial are going to be the same as those issues that were tried in Pittsburgh. Transcript, October 17, 1975, at 113.

Since the contempt proceeding contains only one element, i. e. wilful intent, which was not present in the Pittsburgh proceeding, the two offenses are the same for double jeopardy purposes within the meaning of the *Blockburger* test.

■ In addition, this Court is persuaded that a double jeopardy analysis which focuses on technical comparison of the elements of the two statutes rather than on the overwhelming similarities in the proof the Government intends to present at the contempt trial will result in serious injustice.

The constitutional protection against double jeopardy should not be undermined by an overly formal or technical

---

7. 15 U.S.C. § 1.

8. 18 U.S.C. § 401(3).

application of the "same evidence" test.[9] Justice Rutledge of our Court of Appeals, instructed more than 30 years ago that a trial judge when applying the test should "weigh the difference [in the evidence or statutory elements] to determine whether it is substantial or too minor to be material for purposes of double jeopardy."[10] In the context of this case where the Government has stated that the same factual issues will be tried as were previously tried during the recent four month Pittsburgh proceeding, the addition of the element of a wilful violation of a court decree as present here is not in the Court's view sufficiently material or substantial to supersede the considerations of fairness and finality which form the basis of the double jeopardy bar.

As Justice Harlan stated:

The Fifth Amendment's prohibition against placing a defendant "twice in jeopardy" represents a constitutional policy of finality for the defendant's benefit in federal criminal proceedings. A power in government to subject the individual to repeated prosecutions for the same offense would cut deeply into the framework of procedural protections which the Constitution establishes for the conduct of a criminal trial. And society's awareness of the heavy personal strain which a criminal trial represents for the individual defendant is manifested in the willingness to limit the Government to a single criminal proceeding to vindicate its very vital interest in the enforcement of criminal laws. *United States v. Jorn*, 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971).

Additionally, the Government has asserted that contempt proceedings are not subject to the usual rules of double jeopardy, and in support cites cases arising out of courtroom incidents wherein assault indictments have been upheld even though defendants had already been summarily sentenced for the contemptuous incident.[11] In these cases, however, the contempt sentences were summarily imposed by the presiding judge, a procedure which does not offend the policy underlying the protection against double jeopardy because "a person held in summary contempt and then subsequently indicted does not suffer the harassment of successive trials."[12] Furthermore, our Court of Appeals has also noted that "the contempt power [is] no longer considered *sui generis*" but that "numerous Supreme Court decisions . . . have tended to assimilate criminal contempt to ordinary crimes."[13] In this case, of course, the contempt proceeding envisioned by the Government is not summary but would involve the parties in a lengthy second trial.

■ Criminal contempt, it is argued, is also unique in that it is an offense against the judiciary, whereas the substantive crime is an offense against a legislative command. Since these are offenses against separate "jurisdictions," the Government concluded they may be tried separately without violating the double jeopardy bar.

The separate jurisdiction theory, however, has traditionally been applied in cases where the same criminal act is prosecuted both as a state and a federal offense.[14] Considerations of federalism provide the basic rationale for allowing

9. *Green v. United States*, 355 U.S. 184, 198, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).

10. *District of Columbia v. Buckley*, 75 U.S. App.D.C. 301, 128 F.2d 17, 21 (D.C.Cir.) *cert. denied* 317 U.S. 658, 63 S.Ct. 57, 87 L. Ed. 529 (1942) (concurring opinion).

11. See: *United States v. Rollerson*, 145 U. S.App.D.C. 338, 449 F.2d 1000 (1971) and *United States v. Mirra*, 220 F.Supp. 361 (S. D.N.Y.1963).

12. *Mirra, supra*, n. 11.

13. *Rollerson, supra*, n. 11, 449 F.2d at 1002.

14. See: *Abbate v. United States*, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 and *Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959).

successive trials in those situations where state sovereignty is an issue.

To the extent that the contempt trial would involve a vindication by this Court of its interest in having its decrees obeyed, this Court can, of course, decide for itself whether that interest has been sufficiently vindicated by the Pittsburgh proceedings.

## Due Process

■■ A second trial would also violate Respondents' due process rights under the Fifth Amendment.[15] Multiple antitrust prosecutions arising out of the same course of conduct are particularly unfair because of their length and expense and because of the complex and voluminous nature of the evidence which is customarily involved, and courts have not hesitated to prevent abuse in this area. For instance in *United States v. American Honda Motor Co.*,[16] a national distributor of motorcycles was convicted after a *nolo contendere* plea, of conspiring with dealers to fix prices in the Los Angeles area. American Honda was subsequently indicted for the same conduct in the San Francisco area, and later in Ohio and Illinois. The court in San Francisco found as a factual matter that the conspiracy charged was a single nationwide conspiracy and that a prosecution could have been brought against all of the conspirators in one district. The Government's fragmentation of a single crime into several regional prosecutions was determined to be fundamentally unfair to the defendant:

> . . . successive grand jury inquiries and indictments for alleged separate conspiracies arising out of

the same transaction may, and in this situation do, constitute harassment in violation of the Due Process provision of the Fifth Amendment, which . . . is essentially a recognition of the requirement of fundamental fairness and fair play under a given set of circumstances. *Id.*, 271 F. Supp. at 987.

An Illinois indictment in the *Honda* case was also dismissed on the same due process ground.[17]

## Waiver

■ The double jeopardy and due process issues should have prompted the Government to attempt to prosecute both the Sherman Act and the contempt cases in one trial. Usually, as Justice Brennan has stated: "If the same acts violate different federal statutes protecting separate federal interests those interests can be adequately protected at a single trial by the imposition of separate sentences for each statute violated." *Abbate v. United States*, 359 U.S. 187, 200, 79 S.Ct. 666, 674, 3 L.Ed.2d 729 (1959). A single prosecution would have allowed the Court to have attempted to devise some method of conserving judicial resources while protecting the interests of the defendants.[18]

The Government now contends that it failed to join the two cases because proof of the 1951 District of Columbia Decree would have prejudiced Respondents in the eyes of the jury on the Sherman Act count. Moreover, the Government claims that by not requesting joinder, the Respondents have waived their constitutional protection.[19]

---

15. This Court takes judicial notice of the fact that Respondents have also been subjected to civil penalties in a lawsuit arising out of the same price-fixing conspiracy. *See*: *Wall Products Co. v. National Gypsum Co.*, 326 F.Supp. 295 (N.D.Cal.1971) and 357 F.Supp. 832 (N.D.Cal.1973).

16. 271 F.Supp. 979 (N.D.Cal.1967).

17. *United States v. American Honda Motor Co.*, 273 F.Supp. 810 (N.D.Ill.1967).

18. For instance, the Sherman Act price-fixing conspiracy could have been tried first, a verdict reached, and then using the same jury, the Government could introduce its evidence of wilful violation of the contempt decree, and a second verdict could then be reached.

19. Respondents did file a motion to dismiss the petition in this Court in April 1974, before the Pittsburgh trial began.

The Government's decision to initiate separate prosecutions however, made it much less likely that a joint trial would be feasible. The Pittsburgh case involved eight corporate and individual defendants who were not named in the criminal contempt proceeding. Unless these extra defendants volunteered to be tried in Washington, any joinder would depend on a severance of the Pittsburgh case, an alternative which was firmly rejected by the trial judge in Pittsburgh, who expressed his opposition to a "piecemeal" trial of the Sherman Act indictment. Thus, defendants have not waived their double jeopardy rights by failing to move for a joinder of the two trials, because under the circumstances, such a motion would have been futile.

The Government has emphasized that these are simultaneous prosecutions, the Contempt Petition and the Pittsburgh indictment having been issued on the same day. Notwithstanding the fact that Respondents had notice of both charges at the same time, however, it would have been physically impossible for them to have defended both actions simultaneously in two separate jurisdictions. Thus, Respondents' earlier motion for a stay of the contempt proceeding in the District of Columbia for the duration of the Pittsburgh trial in no way prejudices their right to press this motion to dismiss the Contempt Petition on double jeopardy and due process grounds.

### Conclusion

This Court concludes that to go forward with a second prosecution against Respondents for substantially the same price-fixing scheme for which they have already been convicted would contravene the constitutional protection against double jeopardy, and would constitute an undue harassment contrary to fundamental notions of due process.

For the reasons set forth in the preceding Memorandum Opinion, it is this 10th day of December, 1975,

Ordered that the criminal Contempt Petition filed against these Respondents be, and it hereby is, dismissed.