421 A.2d 1051

COMMONWEALTH of Pennsylvania, Appellee,

v.

Harold FIELDS, Appellant.

Supreme Court of Pennsylvania.

Argued Sept. 24, 1980.

Decided Oct. 31, 1980.

John H. Corbett, Jr., David G. Metinko, Asst. Public Defenders, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Deputy Dist. Atty., Dara A. DeCourcy, Asst. Dist. Atty., Pittsburgh, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

On June 4, 1979, appellant Harold Fields was brought to trial before a jury on one count each of murder of the first degree, murder of the third degree, voluntary manslaughter, carrying a firearm without a license, and former convict owning a firearm. Three days into the trial, the court, upon motion by appellant, declared a mistrial. On September 11, 1979, appellant filed an Application to Dismiss Indictments on the grounds that a new trial would violate his right not to be twice placed in jeopardy. The trial court denied the application and this direct appeal followed.[1]

---

1. The denial of a defendant's pretrial motion to dismiss an indictment on double jeopardy grounds is final and directly appealable to this Court. *Commonwealth v. Lee*, 490 Pa. 346, 349, 416 A.2d 503, 504 (1980). *See also, Commonwealth v. Bolden*, 472 Pa. 602, 610–14, 373 A.2d 90, 93–95 (1977).

■ Appellant's double jeopardy claim is based on the contention that appellant was forced to request a mistrial because of misconduct on the part of the prosecutor. We have reviewed the record and find this contention to be without merit.

Accordingly, the trial court's denial of appellant's Application to Dismiss Indictments is affirmed and the case is remanded for appropriate proceedings.

NIX, J., filed a concurring opinion in which FLAHERTY, J., joined.

ROBERTS, J., filed a concurring and dissenting opinion.

NIX, Justice, concurring.

I agree that the request by appellant for a finding that retrial, on these charges, should not be allowed and the discharge of appellant as to these offenses would be inappropriate. However, I do not accept the suggestion of the majority that the complaint is "without merit." The news article in question placed before the jury evidence of prior criminal activity attributed to appellant, which could not have been properly introduced at the trial of this case and should not have influenced the verdict to be reached in this case. Mr. Donaldson, a respected member of the media, testified under oath that he had spoken to the trial assistant who tried this case and that the trial assistant verified the facts set forth in the article. The trial assistant categorically denied this and offered the possibility that Mr. Donaldson may have overheard a conversation between himself (the trial assistant) and someone involved in the case.[1] If Mr. Donaldson's version of the events is correct, there has been a serious violation of our rules. *See generally Commonwealth v. Pierce*, 451 Pa. 190, 303 A.2d 209 (1973). The fact that appellant is not entitled to the relief he seeks in raising the issue does not mean that the incident should be ignored.

FLAHERTY, J., joins in this opinion.

1. I am also troubled by the fact that the testimony of Mr. Donaldson and the trial assistant appears to be irreconcilable. I am not as willing as the majority to dismiss the credibility of Mr. Donaldson.

ROBERTS, Justice, concurring and dissenting.

I cannot agree with the majority's characterization of appellant's claim as "without merit." The prosecutor's actions clearly approach that level of misconduct which would invoke the bar of the double jeopardy clause. *See Commonwealth v. Starks*, 490 Pa. 336, 416 A.2d 498 (1980). The record reveals prosecutorial overreaching which, although not shown to have been motivated by desire to prejudice appellant or to provoke a mistrial, at the very least deserves strong condemnation by this Court.

On the second day of appellant's trial an article appeared in the Pittsburgh Press concerning the events of the trial and detailing appellant's prior criminal activity. The article attributed its source to the assistant district attorney who was prosecuting the case. After the defense brought the article to the court's attention, the court questioned the jury and discovered that each of the jurors had read the article. Consequently, appellant filed a motion for a mistrial, which was granted.

At a subsequent hearing on appellant's motion to dismiss indictments, both the assistant district attorney and the newspaper reporter testified. The assistant district attorney denied ever having had a discussion with the reporter and also denied knowing him by name or sight. He conceded, however, that "I might well have been discussing the case in a position where it could have been heard. I can't deny that for a minute."

The reporter testified otherwise. He said that he had approached the prosecutor to verify information concerning appellant's criminal activities. The hearing transcript reads in pertinent part:

"Q. Now, in addition, as I indicated to you, you are indicating that he [appellant] was charged with raping a female prisoner in the Youngstown City Jail and that those charges were dropped so that he could be extradited here for the murder charge. Now, specifically where did you get that information?

A. Mr. Steele [Assistant District Attorney].

Q. And when did you get that information?

A. When I talked to him.

Q. So that the day in question [the first day of trial], whenever it was you talked to Mr. Steele, he indicated to you this last paragraph, that Fields had been charged with raping a female prisoner in the Youngstown County Jail and authorities had dropped the charges?

A. I asked him to verify whether or not Mr. Fields had been charged with raping a woman in Ohio, and he did.

Q. And did he then go on to say that those charges had been dropped?

A. Yeah, because I asked him how did Fields get here and he explained that to me.

Q. The charges had been dropped so that he could be extradited here to stand trial on the homicide charge?

A. That's right.

Q. And you're sure that the only conversation that you had with Mr. Steele was on this day, whenever it is, late in the day, and that that was part of the conversation?

A. Quite sure."

Public disclosure by a prosecutor of information prejudicial to a defendant in the midst of trial is conduct which must be closely circumscribed by the courts. *See generally Commonwealth v. Pierce*, 451 Pa. 190, 303 A.2d 209 (1973). While the prosecutor in this case did not evidence an intent to prejudice the defendant or to provoke a mistrial, his actions did in fact result in a mistrial, which deprived the defendant of a trial by the jury originally sworn to decide his case. This Court should not summarily dismiss as meritless a claim based on such misconduct. Rather, it should express its strong disapproval of the prosecutor's actions.