469 A.2d 1063

**COMMONWEALTH of Pennsylvania**

**v.**

**Charles J. ALLEN, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 17, 1981.

Filed Nov. 25, 1983.

Petition for Allowance of Appeal Granted April 24, 1984.

Kenn Sandoe, Lebanon, for appellant.

William L. Thurston, Assistant District Attorney, Lebanon, for Commonwealth, appellee.

Before CERCONE, President Judge, and McEWEN and HOFFMAN, JJ.

McEWEN, Judge:

■ This is an appeal from an order which denied the omnibus pre-trial motion of appellant wherein appellant had argued that prosecution on charges of criminal trespass,[1] simple assault[2] and rape[3] was barred on double jeopardy

1. 18 Pa.C.S.A. § 3503.

2. 18 Pa.C.S.A. § 2701.

3. 18 Pa.C.S.A. § 3121.

grounds.[4] We here consider whether a finding that appellant was in contempt of an order issued pursuant to the Protection From Abuse Act[5] bars subsequent prosecution on charges based on the same conduct which supported the contempt order.

The distinguished Judge John A. Walter, by order of April 18, 1980, enjoined appellant from physically abusing, striking or harassing his wife and minor children. A criminal complaint was subsequently filed on May 16, 1980, charging appellant with simple assault and criminal trespass as a result of an allegation that appellant had forcibly entered the residence of his wife and physically abused her on May 7 and May 8, 1980. As a further result of the incident, appellant was arraigned on contempt charges on May 19, 1980. The Common Pleas Court, after a hearing on May 28, 1980, found appellant to be in contempt of court and ordered him to pay costs and a fine of $750.00. A further criminal complaint based upon the incident was filed on June 3, 1980, and charged appellant with rape.[6]

Appellant asserts that the principle of double jeopardy bars prosecution on all three criminal charges since appellant had previously been convicted of contempt. The contentions set forth by appellant require analysis of the provisions of the Crimes Code, 18 Pa.C.S.A., as well as the double jeopardy clauses of the United States Constitution[7]

4. An appeal of a pre-trial application seeking discharge on double jeopardy grounds is an appealable order. *Commonwealth v. Fields*, 491 Pa. 609, 421 A.2d 1051 (1980); *Commonwealth v. Bolden*, 472 Pa. 602, 373 A.2d 90 (1977); *Commonwealth v. Beckman*, 304 Pa.Super. 239, 450 A.2d 660 (1982).

5. 35 P.S. § 10181.

6. We note that although the rape charge was filed after the other charges, the Commonwealth was aware of the claimed rape at the time the other charges were filed since the affidavits of probable cause for the simple assault and criminal trespass each contained a statement that the complainant had been raped.

7. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject to the same offense to be twice put in jeopardy of a life or limb." The Fifth

and the Constitution of this Commonwealth.[8] We decide that: (1) the sections of the Crimes Code cited by appellant in support of his position are not applicable to this case; (2) the double jeopardy protection of the federal constitution bars only the simple assault charge; (3) and the state constitutional prohibition against double jeopardy does not bar prosecution on the two remaining charges of criminal trespass and rape.

■■■ We begin our study with a determination of whether the applicable provisions of the Crimes Code preclude the second prosecution in this case. *See Commonwealth v. Hude*, 500 Pa. 482, 488, 458 A.2d 177, 180 (1983) (the court will only consider double jeopardy complaints if it is determined that the statutory provisions of the Crimes Code do not require the grant of the relief requested). Sections 109–112 of the Crimes Code, 18 Pa.C.S.A. §§ 109–112, ban second prosecutions in various instances,[9] but these provisions are not applicable to the facts of this case. Although section 107 of the Crimes Code, 18 Pa.C.S.A. § 107, provides that the provisions of Part 1 of Title 18, which includes sections 109–112, are applicable to offenses defined by Title 18, including all of the offenses here charged, sub-section (c) of section 107 provides a number of exceptions, including the provision that section 107 "does not affect the power of a court ... to punish for contempt ...". Thus, we proceed to consider the federal and state constitutional prohibitions

Amendment guarantee against double jeopardy is applicable to the states through the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

**8.** Section 10 of Article 1 of the Pennsylvania Constitution provides that "no person shall, for the same offense, be twice put in jeopardy of life or limb; ..."

**9.** The protection afforded by these sections are as follows: 18 Pa.C.S.A. § 109 addresses prosecutions barred by a former prosecution for the same offense; 18 Pa.C.S.A. § 110 sets forth conditions when a prosecution would be barred by a former prosecution for a different offense; 18 Pa.C.S.A. § 111 describes that situation when a prosecution would be barred by a former prosecution in a foreign jurisdiction; and 18 Pa.C.S.A. § 112 provides a qualification to §§ 109, 110 and 111.

against double jeopardy since the statutory provisions do not require the grant of the relief requested.

"The constitutional prohibition of double jeopardy has been held to consist of three separate guarantees: (1) 'It protects against a second prosecution for the same offense after acquittal. [ (2) I]t protects against a second prosecution for the same offense after conviction. [ (3) ] And it protects against multiple punishments for the same offense.' " *Illinois v. Vitale*, 447 U.S. 410, 415, 100 S.Ct. 2260, 2264, 65 L.Ed.2d 228, 235 (1980). *Quoting North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) (footnotes omitted). The second of these three guarantees is the focus of our attention in this appeal since appellant contends that the finding that he was in contempt was such a conviction as to bar any prosecution on the charges now pending against him. Any analysis of this contention necessarily involves a determination of whether the contempt proceeding was criminal in nature.

■ "Contempt" is classified either as civil contempt or criminal contempt. The two types of contempt may be distinguished from one another by analyzing the primary purpose and objective of the court's order. *Commonwealth v. Marcone*, 487 Pa. 572, 410 A.2d 759 (1980); *In Re "B"*, 482 Pa. 471, 394 A.2d 419 (1978); *Commonwealth v. Feick*, 294 Pa.Super. 110, 439 A.2d 774 (1982). "A citation is for criminal contempt if the court's purpose was to vindicate the dignity and authority of the court and to protect the interest of the general public. If the purpose of the citation is to coerce the contemnor into compliance with the order of the court to do or refrain from doing some act primarily for the benefit of the litigant or a private interest, it is civil contempt. *Commonwealth v. Charlett*, 481 Pa. 22, 27, 391 A.2d 1296, 1298 (1978); *citing Woods v. Dunlop*, 461 Pa. 35, 40 n. 2, 334 A.2d 619, 622 n. 2 (1975)." *Feick, supra* 294 Pa.Super. at 112–13, 439 A.2d at 775. Further, "if the contempt consists solely of a past act, the only allowable judicial response is punitive, and any contempt adjudication must be criminal." *In re Martorano*, 464 Pa.

66, 80 n. 19, 346 A.2d 22, 29 (1975); *Cipolla v. Cipolla*, 264 Pa.Super. 53, 57, 398 A.2d 1053, 1055 (1979).

█ It seems certain that the citation we examine is one of criminal contempt, not civil, since the dominant purpose of the proceeding was to determine whether appellant had disobeyed the order entered pursuant to the Protection From Abuse Act and, if he had, to punish appellant so as to preserve the authority of the court and to protect the interests of the general public. *See Cipolla v. Cipolla, supra.*

Two classes of criminal contempt, direct and indirect, are recognized in this Commonwealth. Our Supreme Court has distinguished between the two:

> The essence of [direct criminal] contempt is that the misconduct constitutes a direct affront to the dignity and authority of the court.... Where that disobedience or misbehavior occurs in the actual presence of the court or has the capacity of directly affecting the proceeding then in progress, it may be properly classified as a direct or the most grievous type of contempt. All other behavior which may have a more remote impact upon the dignity of the court and its ability to fulfill its responsibilities are classified as indirect criminal contempts.

*Commonwealth v. Maurizio*, 496 Pa. 584, 587, 437 A.2d 1195, 1196 (1981); *quoting Commonwealth v. Marcone, supra* 487 Pa. at 579, 410 A.2d at 762–63. Therefore, it seems clear that the wife of appellant here sought a citation for indirect criminal contempt since the conduct that we examine occurred outside the presence of the court. Further, this court in *Cipolla v. Cipolla, supra,* an opinion authored by our illustrious colleague, Judge John P. Hester, ruled that the contempt displayed by a husband who had violated an order issued pursuant to the Protection From Abuse Act was indirect criminal contempt. And, finally, the Protection From Abuse Act itself dictates that "upon violation of a protective order ... the court may hold appellant in indirect criminal contempt and punish him in accordance

with law." 35 P.S. § 10190(a). Thus, the authority for our conclusion is certain.

The contention of appellant that the prior contempt conviction bars subsequent prosecution for criminal trespass, simple assault and rape, is premised on two separate protections afforded an accused. One focuses on the proof necessary to prove the statutory elements of each offense, *Illinois v. Vitale, supra* 447 U.S. at 417, 100 S.Ct. at 2265, 65 L.Ed.2d at 235; *Brown v. Ohio*, 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187, 194 (1977), while the other protection was set forth by the Pennsylvania Supreme Court in the *Campana* decisions [10] and provides that all known criminal offenses arising from the same criminal episode must be concluded in one prosecution.

It is clear from the decisions of the United States Supreme Court that our study of whether the double jeopardy clause of the United States Constitution affords appellant the relief requested requires a determination of whether the elements of the contempt charged includes the same elements as compose the offenses of criminal trespass, simple assault and rape.

> In *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), we stated the principal test for determining whether two offenses are the same for purposes of barring successive prosecutions. Quoting from *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) which in turn relied on *Gavieres v. United States*, 220 U.S. 338, 342–343, 31 S.Ct. 421, 422, 55 L.Ed. 489 (1911), we held that
>
>> " '[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether

---

**10.** The compulsory joinder rule was promulgated in the two decisions of *Commonwealth v. Campana*, 452 Pa. 233, 304 A.2d 432, *vacated and remanded*, 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973) [*Campana I*], *on remand, Commonwealth v. Campana*, 455 Pa. 622, 314 A.2d 854, *cert. denied*, 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974) [*Campana II*].

each provision requires proof of a fact which the other does not.' " 432 U.S., at 166, 97 S.Ct., at 2225. We recognized that the *Blockburger* test focuses on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented at trial. Thus we stated that if " 'each *statute* requires proof of an additional fact which the other does not,' *Morey v. Commonwealth*, 108 Mass. 433, 434 (1871)," the offenses are not the same under the *Blockburger* test. 432 U.S., at 166, 97 S.Ct., at 2226 (emphasis supplied); *Iannelli v. United States*, 420 U.S. 770, 785, n. 17, 95 S.Ct. 1284, 1294, n. 17, 43 L.Ed.2d 616 (1975).

*Illinois v. Vitale, supra* 447 U.S. at 417, 100 S.Ct. at 2265, 65 L.Ed.2d at 235 (footnote omitted).

As we commence this study, we note that the order of April 18, 1980, issued pursuant to the Protection From Abuse Act provided, *inter alia,* that appellant refrain from physically abusing, striking or harassing his wife and children. It was on the basis of this order that the Common Pleas Court found at the contempt hearing that appellant had violated the terms of the order in that he "physically abused his wife by attempting to cause or intentionally, knowingly and recklessly causing bodily injury to her, on the late evening hours of May 7th or early morning hours of May 8th, or both; therefore, the court finds Charles J. Allen to be in contempt of court." (N.T. 5/28/80 at 95).

An examination of the notions expressed by other jurisdictions when confronted with similar or identical issues assists our comparison of those elements necessary to be proved at the contempt hearing with those elements necessary to be proved for each of the three charges which appellant now seeks to dismiss by.

The question of whether the application of the "same evidence" test bars a conviction for indirect criminal contempt and a conviction on the substantive crime when both crimes are based on the same course of conduct has previ-

ously been addressed by a number of courts.[11]  The Supreme Court of Illinois determined in *People v. Gray*, 69 Ill.2d 44, 12 Ill.Dec. 886, 370 N.E.2d 797 (1977), *cert. denied*, *Illinois v. Gray*, 435 U.S. 1013, 98 S.Ct. 1887, 56 L.Ed.2d 395 (1978), that where a defendant was tried, convicted and punished for indirect criminal contempt of court for violation of a protective order by striking his wife with a gun and then shooting her, the constitutional guarantee against double jeopardy barred defendant's subsequent prosecution for aggravated battery arising out of the same conduct.[12] The majority of the court in *Gray* reasoned that "[c]onsiderations of fairness and finality, the very foundation of the double jeopardy bar, require a non-technical evaluation of the 'same evidence' test, and focus upon the similarity of the elements involved in the two proceedings." *Id.* 69 Ill.2d at 51, 12 Ill.Dec. at 889, 370 N.E.2d at 800.  Thus, the court held that although the contempt conviction required the establishment of an additional element, the prosecution for aggravated battery required no proof beyond that provided for the contempt conviction.  The dissent, however, asserted that significantly different elements were involved in the proof of each offense since the criminal contempt in *Gray* required the element of wilful disobedience of a court order, while aggravated battery required that the defendant (a) intentionally or knowingly caused grave bodily harm, permanent disability or disfigurement or (b) used a deadly weapon.  Ill.Rev.Stat.1973, ch. 38, pars. 12–4(a), (b).  The dissent then concluded that even though both prosecutions arose from the same course of conduct of the defendant, the application of the *Blockburger v. United States, supra*, test permitted the two prosecutions.  This conclusion of the

**11.** Distinguishable are cases where defendants are summarily held in contempt of court.  *See United States v. Rollerson*, 308 F.Supp. 1014 (D.D.C.1970), *aff'd*, 449 F.2d 1000 (D.C.Cir.1971);  *State v. Warren*, 186 N.J.Super. 35, 451 A.2d 197 (1982);  *United States v. Mirra*, 220 F.Supp. 361 (S.D.N.Y.1963).  In summary contempt proceedings the contemnor does not suffer the harassment of separate trials and, therefore, the policies and goals underlying the protection against double jeopardy are not offended.

**12.** Defendant had been acquitted of attempted murder.

dissent was based on the view that "contempt retains its distinctive function in specifically protecting our judicial system from abuse" and that "the additional element of wilful disobedience in [the] case is neither immaterial nor insubstantial in distinguishing criminal contempt from ordinary offenses." *Id.* at 58, 12 Ill.Dec. at 891, 370 N.E.2d at 803.

In contrast to the approach taken by the majority in *Gray,* the Supreme Judicial Court of Massachusetts held in *Commonwealth v. Gallarelli,* 372 Mass. 573, 362 N.E.2d 923 (1977), that where defendants were tried and convicted on a criminal complaint which charged that their conduct had interfered with the administration of justice and also constituted contempt of court, such prosecution was not a bar to subsequent trial and conviction for conspiracy to influence a jury where both prosecutions were based on the same incident. The Massachusetts court reasoned that while the Commonwealth was requested to prove an unlawful agreement for the conspiracy indictment, such proof was not necessary for a conviction for contempt; and while the Commonwealth had to prove a course of conduct tending to interfere with, impede, and obstruct the proper administration of justice to convict the defendants of contempt, such proof was not necessary for a conspiracy conviction.

Certain other decisions have specifically addressed the question of whether the willful intent to disobey an order that is a necessary element for the criminal contempt is an additional element for the purposes of the "same evidence" test. Where defendants had been prosecuted on charges of price-fixing, the court in *United States v. United States Gypsum Co.,* 404 F.Supp. 619 (D.D.C.1975), held that they could not subsequently be prosecuted on a contempt charge based on violations of an order which specifically prohibited price-fixing. The court concluded that "the addition of the element of a wilful violation of a court decree as present here is not in the Court's view sufficiently material or substantial to supersede the considerations of fairness and

finality which form the basis of the double jeopardy bar."
*Id.* at 623.

A similar rationale was provided in the foundation for the decision of the District Court in *United States v. Haggerty,* 528 F.Supp. 1286 (D.Colo.1981). A group of air traffic controllers had filed a motion to dismiss prosecutions on charges of participating in a strike against the government on the grounds that they had previously been convicted of criminal contempt for violating a court order which prohibited them from striking against the government. Even though the additional element of intent to violate the court order had to be proven in order to prove contempt, the court concluded that the court order, which formed the basis of the contempt proceeding, prohibited the strike activities which were the subject of the second prosecution of striking against the government. The court reasoned that since the only additional element that the government had to prove in the contempt proceeding was a wilful violation of the order, it was not necessary for the government to prove any additional facts in the second prosecution, and concluded that the case was not one in which "each statute requires proof of the fact that the other does not". As a result, the court held that the second prosecution was barred by the double jeopardy clause.

■ The instant case differs from *Haggerty* and *United States Gypsum Co., supra,* since the criminal trespass and rape charges each require proof of facts additional to those which were necessary to secure the contempt conviction. The contempt order in this case directed appellant to refrain from physically abusing, striking or harassing his wife. The charges of criminal trespass and rape each require the presentation of evidence upon elements that go beyond the proof necessary to convict appellant of contempt. Since charges of violation of the "protection" order required proof of a wilful intention to violate that order, a prosecution upon the charges of trespass and rape is not barred under the "same evidence" test. This same analysis demonstrates, however, that the prosecution for assault must be

abandoned since, although the contempt conviction required a finding of an additional element, namely, the intent to violate the order, the charge of criminal contempt and the charge of simple assault *did not each* require proof of an additional fact. Therefore, a prosecution of the charge of simple assault is barred under the double jeopardy clause of the federal constitution.

■ There remains for study the question of whether the prosecution for the remaining charges of criminal trespass and rape is barred by reason of the protections afforded a defendant by the courts of this Commonwealth. Appellant argues that the prosecution is barred by application of the rule adopted by the Pennsylvania Supreme Court in *Campana I and II, supra,* which provides that criminal offenses arising from the same criminal episode must be disposed of in one prosecution.[13] This rule of compulsory joinder affords a defendant a different protection from that afforded by the same evidence test, since compulsory joinder permits only one prosecution if the charge arises from the same criminal event, regardless of whether different evidence supports the charges and regardless of whether distinct acts are involved. Our Supreme Court has offered the following rationale for the compulsory joinder rule:

13. The distinguished Justice Robert N.C. Nix, Jr. provided in *Commonwealth v. Beatty,* 500 Pa. 284, 286, 455 A.2d 1194, 1196 (1983), the following synopsis of the *Campana* decisions: "[In *Campana I,* t]he compulsory joinder of all offenses arising from the 'same criminal episode' was advanced in a plurality opinion authored by Mr. Justice Roberts and joined by Justices O'Brien and Manderino. Mr. Justice Eagen, in a concurring opinion joined by Chief Justice Jones, urged the adoption of the 'same offense' test. This writer in a concurring opinion expressed a willingness to accept the 'same criminal episode' test as a matter of state law but rejected any implication that such a result was constitutionally compelled under the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution. Mr. Justice Pomeroy, dissenting, did not disagree with 'the same criminal episode' approach but rather dissented on the grounds that such a rule was not constitutionally mandated.
However, in *Campana II* a unanimous Court accepted the 'same criminal episode' test for compulsory joinder since Mr. Justice Pomeroy's dissent did not challenge the validity of the adoption of the same criminal episode rule under the Court's supervisory powers."

The compulsory joinder rule set forth in *Campana I and II* and the provisions of section 110 were designed to serve two distinct policy considerations: (1) to protect a person accused of crimes from governmental harassment of being forced to undergo successive trials for offenses stemming from the same criminal episode; and (2) as a matter of judicial administration and economy, to assure finality without unduly burdening the judicial process by repetitious litigation. *See Commonwealth v. Stewart, supra* 493 Pa. at 29, 425 A.2d at 348; *Commonwealth v. Holmes,* 480 Pa. 536, 541, 391 A.2d 1015, 1017 (1978); *Commonwealth v. Tarver, supra* 467 Pa. at 408, 357 A.2d at 542. 'By requiring compulsory joinder of all charges arising from ... [the same criminal episode], a defendant need only once 'run the gauntlet' and confront the awesome resources of the state.' *Commonwealth v. Campana (Campana I),* 452 Pa. at 251, 304 A.2d at 440–441.

*Commonwealth v. Hude, supra* 500 Pa. at 489, 458 A.2d at 180.

*Hude* specifically states that the determination of whether particular acts constitute a single criminal episode requires a consideration of the temporal sequence of events as well as the logical relationship between the acts. *Commonwealth v. Hude, supra,* 500 Pa. at 490, 458 A.2d at 181. The temporal relationship between the criminal acts is a factor which frequently determines whether the acts are logically related, but the definition of single criminal episode is not limited to those acts which are immediately connected in time. *Id.,* 500 Pa. at 491, 458 A.2d at 182. *Quoting Comment, Commonwealth v. Campana and Section 110 of the Crimes Code: Fraternal Twins,* 35 U. of Pitts.L.Rev. 275, 286–87 (1973). The criminal offenses charged against appellant were committed during a course of criminal behavior and violence directed toward and against one victim and within a continuing five hour period. Thus, we conclude that the criminal offenses were temporally and logically related as a part of a continuing scheme of

criminal activity. Such a conclusion does not, however, trigger a bar to the prosecution on the rape and criminal trespass charges since we hold that the subsequent prosecution does not here present the type of governmental harassment of a defendant that would offend double jeopardy concerns.

■ We so hold because the Pennsylvania Supreme Court has made clear that the need for the protection of the accused from governmental harassment is but one of the considerations which inspired it to adopt the compulsory joinder rule. *Commonwealth v. Beatty, supra* 500 Pa. at 288, 455 A.2d at 1197. *Citing Commonwealth v. Stewart,* 493 Pa. 24, 425 A.2d 346 (1981); *Commonwealth v. Holmes,* 480 Pa. 536, 391 A.2d 1015 (1978); *Commonwealth v. Tarver,* 467 Pa. 401, 357 A.2d 539 (1976). The *Beatty* court held that neither the compulsory joinder rule nor section 110(1)(ii) of the Crimes Code barred prosecution in the Common Pleas Court for aggravated assault where defendant had previously pleaded guilty to the summary offense of failure to identify himself at the scene of the accident, even though both charges arose out of the same criminal incident. The court reasoned that there is no bar since both prosecutions were not within the jurisdiction of a single court, and proceeded to state, as a further basis for the result, that the second prosecution in the case did "not present the type of governmental harassment of a defendant that would offend double jeopardy concerns." *Id.* 500 Pa. at 291, 455 A.2d at 1198.

■ It would seem, therefore, that *Beatty* requires consideration of a further notion when this issue arises—a notion which in this case can be stated as—whether a prosecution for rape and criminal trespass following a previous prosecution on an indirect criminal contempt charge, where all charges arose out of the same criminal episode, is the type of governmental harassment that offends the double jeopardy protection afforded by this Commonwealth. The double jeopardy issue posed in this situation is, if not unique, greatly different from the typical factual situation

in which the double jeopardy issue is presented. One cannot gainsay the fairness of the principle that government must undertake in one proceeding the prosecution of any and all violations of the Crimes Code that occur during a particular episode, but the behavior with which we are confronted consisted not only of violations of the Crimes Code but also of a bold defiance of the authority of the court—an authority rooted in the natural order and ratified through centuries of jurisprudence. Therefore, we conclude that while, as we have earlier noted, double jeopardy principles apply in indirect criminal contempt proceedings, where the first proceeding is an indirect criminal contempt proceeding, a subsequent prosecution for the crimes which composed the contempt does not present the type of governmental harassment that the compulsory joinder rule of *Campana I* and *Campana II* was designed to prevent.

Order reversed in part and affirmed in part. The charge of simple assault is dismissed. Case remanded for proceedings consistent with this opinion on the criminal trespass and rape charges.[14] Jurisdiction is relinquished.

CERCONE, President Judge, concurs in the result.

HOFFMAN, J., files dissenting opinion.

HOFFMAN, Judge, dissenting:

Having succeeded in having appellant jailed, tried, convicted and fined for his actions of May 7 and 8, the Commonwealth now seeks to try appellant on more serious charges arising out of the same criminal episode. Because I find such a prosecution the "type of governmental harassment of a defendant that would offend double jeopardy concerns," I dissent.

"[T]he state with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embar-

---

14. We note that the definition of rape under the Crimes Code, 18 Pa.C.S.A. § 3121, is limited to "sexual intercourse with a person not his spouse, . . ." This issue has not been presented for our consideration.

rassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity...." *Commonwealth v. Hude,* 500 Pa. 482, 492, 458 A.2d 177, 182 (1983), *quoting Green v. United States,* 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). Nor can the state be permitted to test the strength of its case and discover a defendant's trial strategy or defense by first trying him on a lesser charge and then later on the more serious charges. *See Commonwealth v. Hude, supra,* 500 Pa. at 491, 458 A.2d at 182 ("dry runs" to obtain convictions impermissible). Thus, in *Commonwealth v. Campana,* 452 Pa. 233, 304 A.2d 432, *vacated and remanded,* 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973), *on remand,* 455 Pa. 622, 314 A.2d 854, *cert. denied,* 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974), our Supreme Court "expressly bar[red] a subsequent prosecution for any offense arising from the same criminal episode, where the offense was known to the prosecuting authorities at the time of the commencement of the first trial." *Commonwealth v. Holmes,* 480 Pa. 536, 540, 391 A.2d 1015, 1017 (1978).

Here, appellant was charged with simple and aggravated assault three days prior to his arraignment on the contempt charge. Although appellant had been able to post the $1,000 bond required for his release on the assault charges, the lower court set bail for the contempt charge at $5,000, resulting in appellant's return to Lebanon County Prison until his contempt hearing. Appellant was then subjected to a full adversarial proceeding to determine his criminal culpability. The Commonwealth presented the testimony of appellant's wife and two police officers while appellant countered with his own testimony. After the lower court found appellant guilty of contempt and fined him $750, the Commonwealth brought yet another charge against him arising from the same incident, rape.

The majority's conclusion that a second prosecution is beyond the parameters of the double jeopardy protections is untenable. The Commonwealth had sufficient knowledge to charge and, in fact, did charge appellant with assault

before proceeding with the contempt action. The Commonwealth tested the strength of its case and discovered appellant's defense in preparation for trial on the greater charges. Appellant will again be subjected to criminal liability, embarrassment, expense and uncertainty for actions for which he has already been tried and convicted. Contrary to the majority, I find forcing appellant to run the gauntlet a second time for the events of May 7 and 8 offends double jeopardy protections. Accordingly, I dissent.